LOUISVILLE AND NASHVILLE RAILROAD CO. et al., Plaintiffs–Appellees,

v.

PUBLIC SERVICE COMMISSION and State Board of Equalization of Tennessee, Defendants–Appellants.

Nos. 78–1308, 78–1332 and 78–1339.

United States Court of Appeals, Sixth Circuit.

Argued June 11, 1980.
Decided Sept. 26, 1980.

Eugene W. Ward, Gen. Counsel, Tennessee Public Service Commission, Brooks McLemore, Atty. Gen. of Tennessee, Everett H. Falk, Deputy Atty. Gen., William Leech, Atty. Gen., Nashville, Tenn., for defendants–appellants.

Robert C. Moore, Louisville & N. R. Co., Louisville, Ky., Tyree B. Harris, Nashville, Tenn., Everett Gibson, Gregory G. Fletcher, Memphis, Tenn., Dan E. McGugin, Jr., Nashville, Tenn., for plaintiffs–appellees in No. 78–1308.

John P. Long, Metropolitan Atty., Nashville, Tenn., for amicus curiae, The Metropolitan Government of Nashville and Davidson County.

John W. Kelley, Ortale, Kelley, Herbert & Crawford, Nashville, Tenn., for plaintiffs–appellees in No. 78–1332.

W. W. Berry, Jr., Bass, Berry & Sims, Nashville, Tenn., Raymond Whitaker, Jr., South Central Bell Tel. Co., Nashville, Tenn., for plaintiffs–appellees in No. 78–1339.

Before CELEBREZZE and KEITH, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

HARRY PHILLIPS, Senior Circuit Judge.

The Public Service Commission and the State Board of Equalization of Tennessee seek reversal of the orders of the United States District Court for the Middle District of Tennessee with respect to ad valorem tax assessments. The district court enjoined certification of valuations or assessments or taking other action to enforce the 1977 ad valorem property tax assessments on properties of the taxpayers except to the extent that the assessments are reduced to the state–wide median level of appraisal for locally assessed properties or to levels based on each county's average of appraisal for locally assessed properties. We affirm.

I

The primary issue is whether the district court was barred from enjoining the certification of the tax assessments pursuant to

28 U.S.C. § 1341.[1] This requires a determination of whether appellees have a plain, speedy and efficient remedy under Tennessee law in light of *Carroll v. Alsup,* 107 Tenn. 257, 64 S.W. 193 (1901).

Reference is made to the comprehensive opinion of Chief District Judge L. Clure Morton at 493 F.Supp. 162 (M.D.Tenn.1978), for a recitation of the facts. We summarize the pertinent facts for the purposes of this opinion.

The taxpayers are railroad and telephone companies. As public utilities, they are assessed centrally for ad valorem tax purposes by the Public Service Commission (the Commission), using the unit rule of appraisal. The Commission has the responsibility for assessing all "public utility" property, which includes that of the telephone companies and railroads. T.C.A. §§ 67–901, 67–902. Other properties are assessed locally by county or municipal tax assessors.

In early 1978, the taxpayers filed complaints in the district court seeking injunctive relief restraining the defendants from certifying plaintiffs' 1977 property tax assessments in accordance with the final order and decision of the State Board of Equalization. The taxpayers also sought a declaration that the assessments were null and void and that the Board of Equalization be directed to equalize plaintiffs' appraisals on the basis of a state–wide average ratio for locally assessed properties of 63 per cent as reflected in a study conducted by the Division of Property Assessments of the State of Tennessee.

The taxpayers contended that locally assessed properties were valued intentionally and systematically by local assessors at lower percentages (state–wide average of 63 per cent of full value) than were the centrally assessed properties (appraised at 100 per cent of full value). They asserted that they were entitled to reduced valuations in order to be equalized with locally assessed properties in conformity with the equal protection and commerce clauses of the Consti-

tution of the United States. They alleged lack of a plain, speedy, efficient or adequate remedy at law or in equity in the Tennessee courts.

The State Board of Equalization and Public Service Commission argue that plaintiffs' suits are barred by the Tax Injunction Act, 28 U.S.C. § 1341, *supra,* n.1, and that an appropriate judicial remedy is available in the State courts.

In his memorandum opinion, Chief Judge Morton found that plaintiffs' properties were being appraised at 100 per cent of value while locally assessed properties were being appraised at a median of 63 per cent of value. The disparity was found to be intentional and systematic. Judge Morton held that the Constitution of Tennessee, art. 2, § 28 as amended in 1972 (popularly known as Question 3) required the reclassification of all property for ad valorem tax purposes and valuation at 100 per cent of full market value; and that the action of taxing authorities in valuing public utility properties at full value and other properties at less than full value entitles the taxpayers to obtain equalization.

The district court also found that the rule in *Carroll v. Alsup, supra,* did not constitute a plain, speedy and efficient remedy under the facts of this case. The State Board of Equalization was enjoined from certifying plaintiffs' 1977 valuations except to the extent that they were adjusted to the state–wide median of valuation for locally assessed properties, 63 per cent, or to each county's average level of appraisal for locally assessed properties.

## II

In 1972, the Constitution of Tennessee, art. 2, § 28 was amended by the ratification of Question 3 by the electorate. Article 2 § 28, prior to amendment, required in pertinent part:

> All property shall be taxed according to its value, ... so that taxes shall be equal

---

1. **§ 1341. Taxes by States**

   The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of

any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

and uniform throughout the State. No one species of property from which a tax may be collected, shall be taxed higher than any other species of property of the same value ...

Article 2 § 28, as amended, among other things, classifies properties for assessment purposes:

For purposes of taxation, property shall be classified into three classes, to wit: Real Property, Tangible Personal Property and Intangible Personal Property.

Real Property shall be classified into four (4) subclassifications and assessed as follows:

(a) Public Utility Property, to be assessed at fifty–five (55%) percent of its value;

(b) Industrial and Commercial Property, to be assessed at forty (40%) percent of its value;

(c) Residential Property, to be assessed at twenty–five (25%) percent of its value, provided that residential property containing two (2) or more rental units is hereby defined as industrial and commercial property; and

(d) Farm Property, to be assessed at twenty–five (25%) percent of its value...

Tangible Personal Property shall be classified into three (3) subclassifications and assessed as follows:

(a) Public Utility Property, to be assessed at fifty–five (55%) percent of its value;

(b) Industrial and Commercial Property, to be assessed at thirty (30%) percent of its value; and

(c) All other Tangible Personal Property, to be assessed at five (5%) percent of its value; ....

The Legislature shall have power to classify Intangible Personal Property into subclassifications and to establish a ratio of assessment to value in each class or subclass, and shall provide fair and equitable methods of apportionment of the value of same to this State for purposes of taxation. ...

The ratio of assessment to value of property in each class or subclass shall be equal and uniform throughout the State, the value and definition of property in each class or subclass to be ascertained in such manner as the Legislature shall direct. Each respective taxing authority shall apply the same tax rate to all property within its jurisdiction.

The term "value" in Article 2 § 28 prior to the amendment was defined by T.C.A. § 67–605, since repealed, as actual cash value. For the purposes of post amendment definition, T.C.A. § 67–606 provides:

67–606. **Basis of valuation.**–The value of all property shall be ascertained from the evidences of its sound, intrinsic and immediate value, for purposes of sale between a willing seller and a willing buyer without consideration of speculative values, and when appropriate subject to the provisions of the Agricultural, Forest, and Open Space Land Act of 1976, codified in §§ 67–650–67–658.

The willing buyer/willing seller concept, if correctly applied, would result in valuation at full market value or fair market value, in theory an appraisal figure of 100 per cent of the property's "sound, intrinsic and immediate value."

However, for the purposes of an equal protection attack, whether all property is appraised at 100 per cent or 50 per cent of the full worth is not material. The issue on this appeal is quality of the standard of assessment among the properties.

As amended in 1972, Art. 2 § 28 classifies properties for assessment purposes. In all cases, the assessment for each classification/subclassification is a percentage of "its value." Tennessee has chosen to classify properties for assessment purposes, not valuation purposes.

In a comprehensive opinion rendered prior to the 1972 amendment to Art. 2 § 28, in *Louisville and Nashville Railway Company v. Public Service Commission*, 249 F.Supp. 894 (M.D.Tenn.1967), District Judge William E. Miller enjoined the certification or enforcement of assessments of railroad properties at a higher percentage of actual cash value than the custom of local Tennes-

see tax assessors in assessing other property at a smaller fraction of actual cash value. Judge Miller held this system of discriminatory assessment against railroads to be violative of the equal protection clause of the fourteenth amendment. This court affirmed. 389 F.2d 247 (6th Cir. 1968).

### III

■ Plaintiffs' equitable remedy in a federal court is barred by 28 U.S.C. § 1341 if a plain, speedy and efficient remedy is available in the state courts. Plaintiffs' right to declaratory relief would be barred under similar principles. *See Great Lakes Dredge & Dock Co. v. Huffman,* 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943).

■ In Tennessee, the remedy available to a complaining taxpayer premised on allegations of disproportionate assessments or valuations is governed by the State Supreme Court's pronouncements in *Carroll v. Alsup, supra,* wherein the court held:

> We have, therefore, in the present case a property owner who confesses that his property is assessed at less than its actual value, complaining because, in his opinion, his neighbor's property is assessed at a still [292] lower valuation. It is no ground for relief to him, nor can any taxpayer be heard to complain of his assessments when it is below the actual cash [valuation] of the property, on the grounds that his neighbor's property is assessed at a less percentage of its true or actual value than his own. When he comes into court asking relief of his own assessment he must be able to allege and show that his property is assessed at more than its actual cash value. He may come before an equalizing board, or, perhaps, before the courts, and show that his neighbor's property is assessed at less than its actual cash value and ask to have it raised to his own, if his is at the cash value, and in this way the courts, legislatures and taxpayers will co–operate to tax all property at its actual cash value and to make all taxes equal and uniform, as the constitution contemplates. 107 Tenn. at 291–92, 64 S.W. at 201–02.

The Commission and State Board of Equalization assert that *Carroll v. Alsup* is no longer the rule in Tennessee and that appellees have a plain, speedy and efficient remedy under State law. Appellants premise their argument on three basic factors: (1) the amendment of Art. 2 § 28; (2) the subsequent changes in the tax assessment statutes; and (3) the enactment of the Uniform Administrative Procedures Act (UAPA) in 1974.

Appellants argue that prior to the amendment of Art. 2 § 28, the ad valorem tax was based on value which was defined as actual cash value. *See* T.C.A. § 67–605 (repealed). Art. 2 § 28, as amended, is based on value ascertained by the willing seller/willing buyer concept. *See* T.C.A. § 67–606. However, Art. 2 § 28 also states:

> The ratio of assessment to value of property in each class or subclass shall be equal and uniform throughout the State, the value and definition of property in each class or subclass to be ascertained in such manner as the legislature shall direct.

Appellants argue that the equalization level required by the constitution is not the market value level but rather is the ratio of assessment to market value. Therefore, appellants conclude, *Carroll v. Alsup,* does not bar the equalization of values to levels below market value where it is required to achieve equality and uniformity of the *ratios* of assessment to value. We disagree.

Prior to the amendment of Art. 2 § 28, property was required to be assessed on the basis of actual cash value. Under the amendment, assessments are based on a designated percentage of value. A taxpayer who is assessed as directed by the constitution and statutes is in no different a position as the *Carroll v. Alsup* taxpayer merely because the State constitution, as amended, required property to be *assessed* at a percentage of market value.

Further, even though the ratio of assessment to value must be the same within each subclass as mandated by Art. 2 § 28, the valuation of the properties is the figure to

which the assessment is applied, both under the old and new Art. 2 § 28. Under the 1972 amendment, public utility real property is to be assessed at 55 per cent of its value, industrial and commercial real property at 40 per cent of its value and residential and farm property at 25 per cent of its value. The district court found that the latter categories are being assessed respectively at 40 per cent and 25 per cent of 63 per cent of value. The disparity in valuations creates the anomalous result that locally assessed properties are being assessed, in the case of industrial and commercial property, at a rate of 25.2 per cent (40 per cent of 63 per cent of value) while public utility properties are being assessed at 55 per cent (55 per cent of 100 per cent of value). Judge Morton held that the mandate of Art. 2 § 28 has been thwarted because local tax assessors are not assessing properties at the required percentage of their full values.

Because Art. 2 § 28 classifies and subclassifies properties, applying different percentages of assessment to value, it is the valuation of the properties against which the unequal nonuniformity treatment allegations must be measured. The taxpayers raise the issue of nonuniformity in valuations. Appellants contend that the constitution requires only that the ratio of assessment to value be equal and uniform within each class or subclass. We agree with the district court that the constitutional requirement that all property must be valued at full market value would be emasculated by the adoption of this contention. If the rule in *Carroll v. Alsup* is still in effect, it would be controlling in any litigation in the State courts.

Appellants argue that the change in the tax assessment laws has altered the rule in *Carroll v. Alsup.* In effect, appellants contend that the Property Assessment and Classification Act of 1973, in particular T.C.A. § 67–838 [2] does not contain a value standard for equalization purposes as was the case in T.C.A. § 67–822 [3] (repealed) which mandated that equalization was required to conform to the standard of actual cash value. The equalization standard of T.C.A. § 67–838 only requires that equalization be accomplished "in accordance with law." Since Art. 2 § 28 requires equality in the ratio of assessment to value, appellants argue, T.C.A. § 67–838 does not bar equalization actions which have the effect of lowering appraised values below market value when necessary to meet ratio equality requirements.

A comparison of the two statutes reveals no material or significant change in the law with respect to the application of the equal protection clause of the fourteenth amendment. The powers, duties, obligations and rights of the State Board of Equalization have not been altered materially. Since the complaints of the taxpayers are the same as

---

**2.** T.C.A. § 67–838 reads in pertinent part:

Upon its consideration of reports made to it, together with the evidence submitted therewith, or other information available, the state board or the assessment appeals commission if such has been created by the state board under § 67–831 shall take whatever steps it deems are necessary to effect the assessment of property in accordance with the constitution of Tennessee and the laws of the state. Equalization may be made by said board or commission as the case may be by reducing or increasing the appraised values of properties within any taxing jurisdiction, or any part thereof, in such manner as is determined by the state board of equalization will enable said board or commission to justly and equitably equalize assessments in accordance with law.

**3.** T.C.A. § 67–822 (repealed) required the State Board of Equalization to:

receive, and consider, all complaints and reports made to it, together with the evidence submitted therewith; and shall equalize, compute, and fix the value of all such properties within its jurisdiction by the standard of the actual cash value of same, and, for said purposes, said board shall have the power, and it is made its duty to reduce or increase, values of property so that the values of all assessments when so equalized shall conform to said standard of actual cash value. Equalization of such properties may be made by said board, by reducing or increasing the values thereof, by classification of property, or by wards, civil districts or counties or in such manner as will enable the board to justly and equitably equalize assessments in conformity with said standard.

those asserted by the taxpayer in *Carroll v. Alsup* and the statutory authority of the State Board of Equalization to remedy appellees' complaints is substantially the same as its statutory authority at the time of *Carroll v. Alsup*, we cannot accept appellants' proposition that the changes in the tax assessment laws have altered the rule in that case.

Appellants further assert that the enactment of the UAPA in Tennessee in 1974 has altered the rule in *Carroll v. Alsup*. Prior to the enactment of the UAPA, judicial review of the State Board of Equalization's actions was obtainable through the common law writ of certiorari. Appellants argue that such a review did not include a review of the merits, the powers of the court being merely supervisory. The UAPA, they assert, changes the judicial function of the reviewing court from supervisory to appellate in that the making, review and equalization of tax assessments are defined as "contested cases" in T.C.A. § 4–508(b). *See* T.C.A. § 4–523(h). Appellants conclude that this change removes the *Carroll v. Alsup* bar to equalization relief of an individual taxpayer seeking to have his assessment equalized below the level of market value where other taxpayers' properties are assessed based on lower appraisals than his own.

The taxpayers contend that the two minor distinctions between § 4–523(h) and the common law writ of certiorari do not alter the rule. The first goes to the standard of review and has no bearing here. The second goes to the court's § 4–523(h) power to modify an agency decision. However, such power existed in the reviewing court prior to the enactment of the UAPA. *See Prosterman v. Tennessee State Board of Dental Examiners*, 168 Tenn. 16, 73 S.W.2d 687 (1934).

We find no language or interpretation thereof in either the Tennessee Constitution, the tax assessment laws or the UAPA which overrules, expressly or impliedly, the rule in *Carroll v. Alsup*. From our analysis, it is apparent that the rule remains in full force and effect in Tennessee and will remain so until such time as it is overruled by the Supreme Court of Tennessee or changed by the Tennessee Legislature.

In *Township of Hillsborough v. Cromwell*, 326 U.S. 620, 66 S.Ct. 445, 90 L.Ed. 358 (1946), the Court held a rule comparable to that of *Carroll v. Alsup* as employed in New Jersey "is not adequate to protect the respondent's rights under the federal Constitution." 326 U.S. at 624, 66 S.Ct. at 448. Therefore, we find that the district court was not barred by 28 U.S.C. § 1341 from enjoining the State Board of Equalization's certification of appellees' assessments for the year 1977.

■ Furthermore, we conclude that the principles requiring application of the equal protection clause enunciated by District Judge William E. Miller in *Louisville and Nashville Railroad Company v. Public Service Commission, supra*, 249 F.Supp. 894 (M.D.Tenn.1967), *aff'd*, 389 F.2d 247 (6th Cir. 1968) are controlling in the present case. The right of the appellee taxpayers to the equal protection of the law is not affected by the 1972 constitutional amendments or subsequent statutes relied upon by the Commission and State Board of Equalization.

The other contentions raised by appellants urging reversal of the district court have been considered and found to be without merit.

The judgment of the district court is affirmed. No costs are taxed. Each party will bear its own costs on this appeal.