THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
October 4, 2000 Session

# In the Matter Of All Assessments, Review of Ad Valorem Assessments of Public Utility Companies for Tax Year 1998

**Appeal by Permission from the Court of Appeals, Middle Section**
**Tennessee State Board of Equalization**
**Riley C. Darnell, Presiding Member**

---

**No. M1998-00243-SC-R11-CV - Filed November 16, 2000**

---

This Court granted the applications for permission to appeal submitted on behalf of the Tennessee Board of Equalization and certain public utility companies. The purpose of our grant was to consider whether the Court of Appeals erred in determining that the Board of Equalization had exceeded its authority in granting a reduction in the assessed value of certain centrally-assessed public utility tangible personal property for tax year 1998. We hold that the Board of Equalization does have the legal authority, as part of the equalization process, to reduce the appraised value (and the assessed value) of centrally-assessed public utility property. Such a reduction is an appropriate remedy where the reduction causes the appraised value of such centrally-assessed personal property within each local tax jurisdiction to bear the same ratio to fair market value as obtains for the personal property within such local jurisdiction that is appraised and assessed by local taxing authorities. The judgment of the Court of Appeals is reversed, and this case is remanded to the Tennessee Board of Equalization for further proceedings consistent with this opinion.

**Tenn. R. App. 11 Application for Permission to Appeal; Reversed and Remanded.**

FRANK F. DROWOTA, III, J., delivered the opinion of the court, in which RILEY ANDERSON, C. J., ADOLPHO A. BIRCH, JR., JANICE M. HOLDER, and WILLIAM M. BARKER, JJ., joined.

Attorney General Paul G. Summers and Jimmy G. Creecy, Chief Special Counsel, Office of the Attorney General, Nashville, Tennessee, for appellant, Tennessee State Board of Equalization.

James W. McBride, Washington, D. C., Stephen D. Goodwin, Memphis, Tennessee, and Brigid T. Miller, Nashville, Tennessee for intervenors/appellants, Coalition of Certain Utilities.

T. Arthur Scott, Jr. and Suzanne S. Cook, Kingsport, Tennessee, for intervenors/appellants, Appalachian Power Company and Kingsport Power Company.

James L. Charles and Paul Krivacka, Nashville, Tennessee for appellee, The Metropolitan Government of Nashville and Davidson County.

Jeffrey D. Moseley, Franklin, Tennessee, Donnie E. Wilson, Memphis, Tennessee, Robert B. Rolwing, Memphis, Tennessee, and Jean Dyer Harrison, Nashville, Tennessee, for appellees, Shelby and Williamson Counties.

## OPINION

### Factual and Procedural Background

The issue presented in this case is whether the Tennessee State Board of Equalization ("Board of Equalization") has the legal authority to grant a reduction in the appraised (and therefore assessed) value of tangible personal property owned by public utility companies. The applicants are the Board of Equalization and certain public utility companies (airlines, railroads, trucking companies, power companies, etc.) the tangible personal property of which is appraised for Tennessee property tax purposes pursuant to Tenn. Code Ann. § 67-5-1301 et seq. In accordance with this statute, public utilities' tangible personal property as well as their real property is appraised first by the Comptroller of the Treasury and then by the Board of Equalization.

Most tangible personal property used in business is appraised and assessed for Tennessee tax property purposes by the county taxing authorities in the counties where the owners of such property do business. Pursuant to Tenn. Code Ann. § § 67-5-901, et seq., industrial and commercial taxpayers must annually file a schedule on which they list the tangible personal property they use in their businesses. Section 67-5-903(f) contains a schedule of allowable rates of depreciation for commercial and industrial tangible personal property. The public utility companies involved in this case do not use the depreciation schedule set forth in § 67-5-903(f). These utilities contend that the rates of depreciation in the § 67-5-903(f) schedule systematically cause locally assessed industrial and commercial tangible personal property to be valued significantly below the fair market value of such industrial and commercial property, and below the appraised value of comparable public utility tangible personal property.

For the taxable year involved in this case, 1998, the Comptroller of the Treasury ("Comptroller") accredited the factual assertions made by the public utility companies regarding the relative appraisals of public utility tangible personal property versus industrial and commercial tangible personal property. On August 3, 1998, the Comptroller notified public utility companies doing business in this state that their 1998 tangible personal property assessments would reflect a 15% reduction in evaluation. This adjustment was made in an effort to equalize the ratio of appraised value to fair market value of public utility tangible personal property to the comparable ratio for industrial and commercial tangible personal property. Upon receiving notice of this 15% reduction for public utility property, the county taxing authorities for Davidson County, Shelby County, and Williamson County, pursuant to Tennessee Code Ann. § 67-5-1327(b), filed exceptions with the Comptroller and objected to the reduction in the appraised value of public utility tangible personal property for 1998.

The Comptroller, pursuant to § 67-5-1327(c), certified the reduced appraisals of public utility tangible personal property for 1998 to the Board of Equalization. The three county taxing authorities

referred to the exceptions mentioned above with the Board of Equalization. Following a hearing, the Board issued a final decision and order in which it upheld the 15% reduction in the appraised value of public utility tangible personal property for 1998.

The taxing authorities for Davidson, Shelby, and Williamson counties, pursuant to Tenn. Code Ann. § 4-5-322(b)(1) and Tennessee Rule of Appellate Procedure 12, filed a petition for judicial review of the Board of Equalization's decision directly with the Court of Appeals for the Middle Section.

In dealing with the only issue that it found to be involved in the petition for judicial review, the Court of Appeals held as follows: "We simply find no authorization for the Board to reduce the evaluation of taxable property below the fair market value of the property absent legislative authorization to do so. We have found no legislative authorization. However commendable the action of the Board in furthering the purpose of fairness and equity, we can not find legal justification for the action." For the reasons set forth below we hold that there is such legislative authorization.

## Analysis

Prior to an amendment that was adopted in 1972 and became effective on January 1, 1973, Article II, § 28 of the Tennessee Constitution included the following provisions regarding the taxation of property:

> All property, real, personal or mixed, shall be taxed, . . . All property shall be taxed according to its value, . . . No one species of property from which a tax may be collected shall be taxed higher than any other species of property of the same value.

Based on this pre-1973 version of Article II, § 28 of the Tennessee Constitution, the Supreme Court rendered its decision in Carroll v. Alsup, 107 Tenn. 257, 64 S.W. 193 (1901). In that case an owner of real property in Shelby County paid property taxes under protest and sued for a refund. The taxpayer contended that his property was assessed at 90% of its value, whereas other pieces of surrounding property were assessed at 75%, 60%, and 40% of their respective values. In denying relief to the taxpayer, this Court stated:

> We have therefore in the present case a property owner, who confesses that his property is assessed at less than its actual value, complaining because, in his opinion, his neighbors' property is assessed at a still lower evaluation. It is no ground for relief for him; nor can any taxpayer be heard to complain of his assessments, when it is below the actual cash value of the property, on the ground that his neighbors' property is assessed at a lesser percentage of its true or actual value than his own. When he comes into court asking relief of his own assessment, he must be able to allege and show that his property is assessed at more than its actual cash value. Carroll, 107 Tenn. at 291-92, 64 S.W. at 201-02.

As amended, effective as of January 1, 1973, Article II, § 28 of the Tennessee Constitution now states:

In accordance with the following provisions, all property real, personal or mixed shall be subject to taxation, . . .

The ratio of assessment to value of property in each class or subclass shall be equal and uniform throughout the State, the value and definition of property in each class or subclass to be ascertained in such manner as the Legislature shall direct. Each respective taxing authority shall apply the same tax rate to all property within its jurisdiction. (emphasis added).

This amendment to Article II, § 28 also divided property "for purposes of taxation," into "real property, tangible personal property and intangible personal property." Tangible personal property was further divided into subclassifications as follows:

Tangible Personal Property shall be divided into three (3) subclassifications and assessed as follows:

(a) Public Utility Property, to be assessed at fifty-five (55%) percent of its value;
(b) Industrial and Commercial Property, to be assessed at thirty (30%) percent of its value; and
(c) All other Tangible Personal Property, to be assessed at five (5%) percent of its value; provided, however, that the Legislature shall exempt Seven Thousand Five Hundred ($7,500) Dollars worth of such Tangible Personal Property which shall cover personal household goods and furnishings, wearing apparel and other such tangible property in the hands of a taxpayer.

Based on this constitutional amendment, the General Assembly enacted the following legislation, which is currently codified in Tenn. Code Ann. § 67-5-901(a):

(1) Public utility property shall be assessed at fifty-five percent (55%) of its value;
(2) Industrial and commercial property shall be assessed at thirty percent (30%) of its value; and
(3)(A) All other tangible personal property shall be assessed at five percent (5%) of its value, except that for the purpose of taxation under this chapter, all other tangible personal property shall be deemed to have no value. (emphasis added).

In Sherwood Co. v. Clary, 734 S.W.2d 318 (Tenn. 1987), this Court held that the provision in § 67-5-901(a) stating that tangible personal property other than public utility property, industrial

property, and commercial property shall be deemed to have no value did not violate equal protection principles. The Court stated its rationale as follows:

> The General Assembly concluded that no appreciable revenue could be obtained by an attempt to tax household goods and chattels or other non-business tangible personal property. Such property often does not generate revenue while industrial and commercial business property does so.

> Given the fact that the 1972 amendment exempted the entire amount of individual "personal or family checking or savings accounts" and substantial amounts of tangible personal property, the attempt to levy ad valorem taxes upon private assets of individuals not used in commerce or industry proved futile and self-defeating. Sherwood, 734 S.W.2d at 321.

Our decision in Sherwood, also included the following language:

> Appellant (which was an owner of tangible personal property used in its business) paid its tangible personal property taxes under protest and sued for a refund. It is doubtful that this remedy is available to it in the state courts under the leading case of Carroll v. Alsup, 107 Tenn. 257, 64 S.W. 193 (1901). There this Court held that if a taxpayer was unable to show improper assessment of his own property, he could not seek relief simply because other property might by assessed at a smaller percentage of its true or actual value than his own.

> As pointed out by the Court of Appeals for the Sixth Circuit in the case of Louisville & Nashville Railroad Company v. Public Service Commission, 631 F. 2d 426, (6th Cir. 1980), cert. denied, 450 U. S. 959, 101 S. Ct. 1418, 67 L.Ed.2d 384 (1981), there has been little departure from the rule of the Carroll case supra, in the state courts. Id. at 319.

As explained in the discussion below, one area of property taxation in which there has been a substantial departure from the "rule of the Carroll case" is the Board of Equalization's authority to adjust the evaluation of public utility property for purposes of equalizing such evaluations with the prevailing evaluations of industrial and commercial property in each county.

In Sherwood, we recognized that the amendment to Article II, § 28 of the Tennessee Constitution gave the General Assembly broad authority regarding the evaluation of property for property tax purposes; in this regard this Court stated:

> In our opinion the General Assembly was not constitutionally required to attempt to administer and maintain an impractical system of taxation (i.e., taxation of non-business tangible personal property), and it was given very broad discretion with respect to determining the value and definition of property in each of the authorized

classifications or sub-classifications. (emphasis added). Sherwood, 734 S.W.2d at 321.

Our holding was based on the General Assembly's enactments of legislation dealing with the evaluation of public utility property pursuant to its authority under the amendment to Article II, § 28. Some of these enactments were made in response to a pair of federal court decisions. The first of these was Louisville & Nashville Railroad Co. v. Public Service Commission of Tennessee, 249 F.Supp. 894 (M.D. Tenn. 1966), aff'd, 389 F.2d 247 (6th Cir. 1968) ("L & N I"). In L & N I the federal district court held that the central evaluation of railroad public utility property (which was then performed by the Public Service Commission) in respective counties at a higher percentage (60% to 100%) than the local evaluation of industrial and commercial property in such counties (35% to 40%) violated the railroad's right to equal protection under the United States Constitution and the Tennessee Constitution. Citing Carroll, the United States District Court in L & N I stated that the railroad company was not entitled to relief under then current Tennessee law. However, the court held the railroad company was entitled to a reduction in the evaluation of its property under federal law. The court stated:

> This Court holds that the right of the taxpayer whose property alone is taxed at 100% of its true value is to have his assessment reduced to the percentage of that value at which others are taxed even though this is a departure from the requirement of the statute. The conclusion is based on the principle that where it is impossible to secure both the standard of the true value, and the uniformity and equality required by law, the latter requirement is to be preferred as the just and ultimate purpose of the law. (emphasis added). L & N I, 249 F. Supp. at 902.

In 1978, the United States District Court for the Middle District of Tennessee decided Louisville & Nashville Railroad Company v. Public Service Commission of Tennessee, 493 F. Supp. 162 (M. D. Tenn. 1978), aff'd, 631 F.2d 246 (6th Cir. 1980), cert. denied, 450 U. S. 959, 101 S. Ct. 1418, 67 L.Ed.2d 384 (1981) ("L & N II"). The federal district court again held that a discrepancy in the evaluation of public utility property from that of industrial and commercial property entitled railroad companies to equalization, and that the form of such equalization was a reduction in the evaluation of the railroads' property. The court described the underlying facts in L & N II as follows:

> From the record in these consolidated cases the Court finds that each of the plaintiffs has been assessed on both its operating and non-operating property based upon evaluation of 100% of market value. . . .
>
> [t]he State-wide median of appraisal of locally assessed properties is 62.9% of value. L & N I, 493 F. Supp. at 164.

Again citing Carroll, the Court in L & N II stated that statutes in Tennessee had not been changed to entitle the railroad companies to relief under state law, but that they were entitled to relief

under federal law based on equal protection grounds. The court described the appropriate form of relief as a reduction in the evaluation of the public utility property; the court stated:

> The Court, therefore, finds that all property must be valued under the Constitution of Tennessee at 100% of market value, and the failure of the taxing authorities to so value one or more sub-classes permits those sub-classes whose property is appraised at market value to seek and obtain equalization.
>
>     . . .
>
> The sole question remaining for the Court's determination is the form and extent of the relief to be granted. Plaintiffs contend that the relief to which they are entitled is a reduction of their final assessments to 63% of the assessments which would otherwise have been determined based upon plaintiffs' property values, conceded to be at 100% of actual value, fixed by the State Board, thereby placing the amount of their taxes on a constitutionally proportionate basis with taxes paid on locally assessed property. The Court finds such a reduction to be appropriate in this case. Courts in a number of states have determined that the differential in property appraisal levels shown by an assessment to sales ratio study is the proper indicator of relief to be granted in the property tax equalization suits. . . . (emphasis added) (citations omitted). L & N II, 493 F. Supp. at 168, 173.

The United States District Court in L & N II then described the duties imposed on the Board of Equalization and the Public Service Commission (now Comptroller), stating:

> It is the duty of the State Board and/or the Commission, to certify to the counties and to the municipalities the proper amount of assessed values determined in accordance with this opinion upon which the counties and the municipalities are entitled to levy a tax. In view of the fact that the appraisal levels vary from county to county, ranging from an average of 23% of value in Hancock County to an average of 89% of value in Sullivan County, the defendants may find it advisable to certify assessments based upon each county's average level of appraisal rather than the state-wide median for all counties . . .
>
> Judgment will be entered declaring the rights of the plaintiffs in accordance with this opinion and enjoining defendants from certifying or enforcing the challenged assessment of plaintiffs' properties without prejudice to the right of the State Board to rehear and reconsider the assessments for the sole purpose of a reduction to 63% of the assessments that would otherwise have been determined based upon plaintiffs' property values fixed by the State Board. Pending such redetermination the cases will be retained on the active docket with any party having the right to apply to the Court at any time for other or additional orders. (emphasis added). L&N II, 483 F. Supp. at 173-74.

In response to the foregoing federal court decisions, the General Assembly enacted Public Acts 1980, Chapter No. 827, the preface to which included the following:

> Whereas, the U. S. District Court in Nashville has determined that all property in Tennessee must be valued at 100% of market value and the failure of taxing authorities to value one or more sub-classes permits those sub-classes whose property is appraised at market value to seek and obtain equalization . . . .

Public Acts 1980, Chapter No. 827 included an amendment to a statute that is now codified at Tenn. Code Ann. § 67-5-1302 (b)(1). This statute provides as follows:

> (1) The assessments of public utility property, as set by the comptroller of the treasury in accordance with sub-section (a), shall be adjusted, where necessary, on the basis of appropriate ratios, as are determined by the board of equalization for purposes of equalizing the values of public utility property to the prevailing level of value of property in each jurisdiction.

Public Acts 1980, Chapter No. 827 and Public Acts 1980, Chapter No. 820 also included provisions requiring the Board of Equalization to conduct periodic appraisals of real property and to notify local taxing authorities of the results of such appraisals. The purpose of these reappraisals is to maintain an equality in each county in the ratio of appraised value to actual value for public utility property as for commercial and industrial property. These statutes are currently codified at Tenn. Code Ann. § 67-5-1601 et seq.

The authority to adjust the appraised values of public utility property to achieve equalization with industrial and commercial property is found in § 67-5-1509(b). This statute provides:

> (b) Equalization may be made by the board or commission, as the case may be, by reducing or increasing the appraised values of properties within any taxing jurisdiction, or any part thereof, in such manner as is determined by the state board of equalization will enable the board or commission to justly and equitably equalize assessments in accordance with law.

In Northwest Airlines, Inc. v. Tennessee State Board of Equalization, 861 S.W.2d 232 (Tenn. 1993), we acknowledged the existence of the equalization process, stating:

> Pursuant to the provisions of T.C.A. §§ 67-5-1302(b)(1) and 67-5-1606(c), the value of commercial air carriers' property that is assessed by the Public Service Commission is adjusted so that the value of such property within each local tax jurisdiction bears the same ratio to fair market value as does the property within such local jurisdiction that is appraised and assessed by local taxing authorities. This process is generally referred to as "equalization." Northwest Airlines, 861 S.W.2d at 234.

The United States Court of Appeals for Sixth Circuit, in <u>CSX Transportation, Inc. v. Tennessee State Board of Equalization</u>, 964 F.2d 548 (6th Cir. 1992), described the equalization process as follows:

> The State Board of Equalization reviews the assessments made by the Public Service Commission. T.C.A. § 67-5-1328. The State Board of Equalization is part of an elaborate statutory process in Tennessee to ensure that centrally valued railroad property is assessed at the same level as locally valued property. Tenn. Code Ann. § 67-5-1603, et. seq. The local assessment of property values is usually below 100% of fair market value because most counties do not value all real property annually. Railroad property, on the other hand, is appraised annually at full value by the Commission. More frequent assessment generally results in higher relative taxation, since more of the actual current market value is captured in the assessed value to which the statutory assessment ratios are then applied. In Tennessee, a statutory process known as equalization is meant to ensure that centrally valued railroad property is assessed at the same level as local, county assessed property. <u>CSX Transporation</u>, 964 F.2d at 551-52.

## Conclusion

The Tennessee Board of Equalization is authorized to reduce (or increase) the appraised (and therefore corresponding assessed) value of centrally-assessed public utility tangible personal property as part of the equalization process, the purpose of which is to equalize the ratio of the appraised value to fair market value of public utility property in any particular county with the corresponding ratio for industrial and commercial property in that county. The judgment of the Court of Appeals is reversed, and the case is remanded to the Tennessee Board of Equalization for further proceedings consistent with this opinion. Costs of this appeal are assessed to Davidson County, Shelby County, and Williamson County.

_____
FRANK F. DROWOTA, III, JUSTICE