FILED
01/25/2021
Clerk of the
Appellate Courts

# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### November 16, 2020 Session

## COLONIAL PIPELINE COMPANY v. TN STATE BOARD OF EQUALIZATION

**Appeal from the Tennessee State Board of Equalization**
**Nos. 123390; 117550; 120567**
**Tennessee State Board of Equalization Executive Director**

_____

### No. M2020-00247-COA-R12-CV

_____

An interstate pipeline company filed this direct appeal from a decision of the Tennessee Board of Equalization rejecting the company's claims for equalization relief. Having considered the company's arguments that Tenn. Code Ann. § 67-5-501(10)(B)(iii) has been inconsistently applied, we affirm the Board's decision.

### Tenn. R. App. P. 12 Direct Review of Administrative Proceeding; Judgment of Tennessee Board of Equalization Affirmed

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and W. NEAL MCBRAYER, J., joined.

Stephen H. Price, Nashville, Tennessee, and Everett B. Gibson, Memphis, Tennessee, for the appellant, Colonial Pipeline Company.

Herbert H. Slatery, III, Attorney General and Reporter, Andrée Blumstein, Solicitor General, and Mary Ellen Knack, Senior Assistant Attorney General, for the appellee, Tennessee State Board of Equalization.

John Freemont Sharpe, Jr., Nashville, Tennessee, for the appellee, Tennessee Comptroller of the Treasury.

Robert T. Lee, Mt. Juliet, Tennessee, for the appellees, Bradley County Government, Coffee County Government, Grundy County Government, Loudon County Government, Marion County Government, McMinn County Government, and Monroe County Government.

# OPINION

## FACTUAL AND PROCEDURAL BACKGROUND

Colonial Pipeline Company ("Colonial") is an interstate pipeline company that transports refined petroleum products such as gasoline, diesel fuel, jet fuel, heating oil, and kerosene for third parties. Colonial's pipeline traverses thirteen states, including Tennessee, and extends from Texas to New York. Although the company has the power of eminent domain, Colonial typically obtains easements from property owners, rather than buying property, to allow the company to bury its pipeline.

Tennessee classifies Colonial as a public utility company. Property tax assessments for public utilities are determined by the Comptroller's Office of State Assessed Properties ("OSAP"), rather than by county assessors. *See* Tenn. Code Ann.§ 67-5-1301(a)(7); *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 833 (Tenn. 2008). As our Supreme Court explained in *Colonial Pipeline Co. v. Morgan*, the Tennessee Constitution empowers the state "to tax all real, personal, or mixed property, including that owned and operated by companies like [Colonial]." *Morgan*, 263 S.W.3d at 833. Both real and tangible personal property classified as public utility property is to be assessed at 55% of its value. *Id.* (citing TENN. CONST. art. II, § 28). In 1997, however, "the Board of Equalization directed OSAP to reduce the assessment value of personal property owned by centrally-assessed taxpayers" by 15%. *Id.* at 834; *In re All Assessments*, 58 S.W.3d 95, 96 (Tenn. 2000). The Board of Equalization ("BOE") ruling, which reflected its recognition that locally assessed personal property was being under-assessed due to statutory depreciation tables that overstated depreciation, was ultimately affirmed by our Supreme Court. *See In re All Assessments*, 58 S.W.3d at 96, 102.

Thereafter, in an effort to reduce its tax liability, Colonial argued that its pipeline should be classified as personal property. *Morgan*, 263 S.W.3d at 834. The BOE rejected this argument and followed OSAP's recommendation "that pipelines should be classified as real property." *Id.* In 2004 (and each succeeding tax year), Colonial appealed OSAP's notice of assessment of its property to the BOE. In 2005, the company filed an action in chancery court challenging the constitutionality of what is now Tenn. Code Ann. § 67-5-501(10)(B), a provision enacted in 2004 (2004 TENN. PUB. ACTS ch. 719) that defines certain pipelines and other property as real property for purposes of classification and assessment. *Morgan*, 263 S.W.3d at 832, 835. The chancery court case reached the Tennessee Supreme Court, which decided that Colonial raised facial and "as applied" constitutional challenges and that questions regarding "whether the *application* of a statute violates constitutional principles should be submitted to the agency . . . before any action is brought in the Chancery Court." *Id.* at 845-46. On remand, the chancery court rejected all of Colonial's facial challenges to the statute's constitutionality and dismissed the case. The company's "as applied" challenges were to be considered by the BOE.

Back before the BOE, Colonial argued that the classification of its pipelines as real property violated equal protection and requested equalization relief on the ground that Tenn. Code Ann. § 67-5-501(10)(B)(iii) had been inconsistently applied.[1]  At an evidentiary hearing before an administrative law judge ("ALJ") in March 2019, Colonial presented examples of locally assessed pipe that had purportedly been misclassified as personal property.  The ALJ rejected the company's characterization of misclassification, however, because he determined that Chapter 719 did not apply to the identified local pipes, which were associated with large above-ground tanks at petroleum storage facilities or with manufacturing processes.  The ALJ interpreted the statute to apply to Colonial's pipeline property but not to most locally assessed taxpayers who owned piping.  Colonial appealed the ALJ's initial decision to the BOE assessment appeals commission, which conducted a review on the record and affirmed the ALJ's decision.  This appeal followed.

This appeal raises the following issues:

1. Whether the BOE correctly determined that Tenn. Code Ann. § 67-5-501(10)(B)(iii) applies to the pipelines owned by Colonial but does not apply to locally assessed piping used in the manufacturing or refining process.

2. Whether the BOE properly determined, in denying Colonial's equal protection and uniform taxation claims, that Tenn. Code Ann. § 67-5-501(10)(B)(iii) had not been inconsistently applied among similarly situated taxpayers.

3. Whether the ALJ, in denying equalization relief to Colonial, improperly relied on a deposition errata sheet.

STANDARD OF REVIEW

Colonial brings this appeal pursuant to part I of Tenn. R. App. P. 12, which governs appeals taken directly to the Court of Appeals from administrative agencies subject to the Tennessee Uniform Administrative Procedures Act ("UAPA").  *See TECO Barge Line, Inc. v. Wilson*, No. M2009-01675-COA-R12-CV, 2010 WL 2730591, at *2 (Tenn. Ct. App. July 9, 2010) (stating that review of decisions of the BOE assessment appeals commission falls under the UAPA).  Tennessee Code Annotated section 4-5-322(h) states:

> The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
>
> (1) In violation of constitutional or statutory provisions;

---

[1] The remedy requested by Colonial was to classify its piping as personal property.

(2) In excess of the statutory authority of the agency;

(3) Made upon unlawful procedure;

(4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(5)(A) Unsupported by evidence that is both substantial and material in the light of the entire record.

(B) In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

The UAPA's narrow standard of review for an administrative body's factual determinations "suggests that, unlike other civil appeals, the courts should be less confident that their judgment is preferable to that of the agency." *Wayne Cnty. v. Tenn. Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 279 (Tenn. Ct. App.1988). This court, like the trial court, must apply the substantial and material evidence standard to the agency's factual findings. *City of Memphis v. Civil Serv. Comm'n*, 239 S.W.3d 202, 207 (Tenn. Ct. App. 2007); *Bobbitt v. Shell*, 115 S.W.3d 506, 509-10 (Tenn. Ct. App. 2003). With respect to questions of law, our review is de novo with no presumption of correctness. *Cnty. of Shelby v. Tompkins*, 241 S.W.3d 500, 505 (Tenn. Ct. App. 2007).

ANALYSIS

I.   Construction of Tenn. Code Ann. § 67-5-501(10)(B)(iii).

The parties agree that the outcome of this case turns upon the proper construction of Tenn. Code Ann. § 67-5-501(10)(B)(iii), which was enacted by Chapter 719 of the Public Acts of 2004.  Tennessee Code Annotated section 67-5-501(10)(B)(iii) (or "Chapter 719") currently provides that, for purposes of the classification and assessment of property, real property includes:

Mains, pipes, pipelines and tanks permitted or authorized to be built, laid or placed in, upon, or under any public or private street or place for conducting steam, heat, water, oil, electricity or any property, substance or product capable of transportation or conveyance therein or that is protected thereby, excluding propane tanks for residential use and above ground storage tanks that can be moved without disassembly and are not affixed to the land[.]

The General Assembly added the final phrase concerning above ground storage tanks in 2006.  *See* 2006 TENN. PUB. ACTS ch. 521.

Our Supreme Court set out guiding principles of statutory interpretation in *Colonial Pipeline Co. v. Morgan*:

Our chief concern is to carry out legislative intent without broadening or restricting the statute beyond its intended scope. *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 678 (Tenn. 2002). In construing legislative enactments, we presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the General Assembly is not violated by so doing. *In re C.K.G.*, 173 S.W.3d 714, 722 (Tenn. 2005). When a statute is clear, we apply the plain meaning without complicating the task. *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004). Our obligation is simply to enforce the written language. *Abels ex rel. Hunt v. Genie Indus. Inc.*, 202 S.W.3d 99, 102 (Tenn. 2006). When a statute is ambiguous, however, we may reference the broader statutory scheme, the history of the legislation, or other sources. *Parks v. Tenn. Mun. League Risk Mgmt. Pool*, 974 S.W.2d 677, 679 (Tenn. 1998). We presume the General Assembly was aware of its prior enactments at the time it passed the legislation. *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995).

*Morgan*, 263 S.W.3d at 836.

Colonial takes the position that Chapter 719 "applies to all piping capable of conveying any substance that is 'built, laid or placed in, upon or under' land." Under this interpretation, Chapter 719 would cover locally assessed piping such as piping used in manufacturing. Yet, as reflected in the evidence presented before the ALJ, locally assessed piping is typically assessed as personal property based upon the application of the law of fixtures. The key statutory phrase relied upon by the BOE is the reference to "pipelines and tanks *permitted or authorized* to be built." Tenn. Code Ann. § 67-5-501(10)(B)(iii) (emphasis added). According to the BOE, the words "permitted or authorized" include pipelines placed on or under property pursuant to easements: the easements permit or authorize Colonial to build or place its pipeline under the property owner's land. The BOE asserts that pipes or pipelines placed by the property owners themselves—for example, at a manufacturing plant—are not "permitted or authorized."

We have concluded that the plain language and purpose of the statute support the BOE's interpretation of Chapter 719. The statute states that real property includes pipes and pipelines "permitted or authorized to be built, laid or placed in, upon, or under any public or private street or place for conducting" products including refined petroleum products. Tenn. Code Ann. § 67-5-501(10)(B)(iii). Black's Law Dictionary defines "permit," in pertinent part, to mean "[t]o consent to formally; to allow (something) to happen, esp. by an official ruling, decision, or law." BLACK'S LAW DICTIONARY (11th ed. 2019). "Authorize" means "[t]o give legal authority; to empower," or "[t]o formally approve; to sanction." *Id.* These definitions include the concept of a formal sanction or act of approval, which would include an easement.

Piping installed on land owned in fee simple by the piping owner does not require legal approval and thus does not fall within the plain meaning of the statutory language. Colonial argues that the term "authorized" "is sufficiently broad in scope to encompass not only personal or property legal rights such as a license, right of way or easement, but also any other form of personal or property legal rights of a taxpayer, including ownership of land in fee simple." We disagree. If this were the meaning of the term "authorized," the term would be unnecessary; the word would have no qualifying effect because all pipes and pipelines, no matter how they are placed, would be included in the definition of real property.[2]

As our Supreme Court has recently stated, "In all cases involving statutory construction, judges must look not only at 'the language of the statute,' but also 'its subject matter, the object and reach of the statute, the wrong or evil which it seeks to remedy or prevent, and the purpose sought to be accomplished in its enactment.'" *Coffee Cnty. Bd. of Educ. v. City of Tullahoma*, 574 S.W.3d 832, 845-46 (Tenn. 2019) (quoting *Spires v. Simpson*, 539 S.W.3d 134, 143 (Tenn. 2017)). The circumstances surrounding the enactment of Chapter 719, described by the Supreme Court in *Colonial Pipeline v. Morgan*, reflect the purpose for its passage. *See Morgan*, 263 S.W.3d at 833-34. In *ANR Pipeline Co. v. TN Board of Equalization*, Nos. M2001-01098-COA-R12-CV, M2001-01117-COA-R12-CV, M2001-01119-COA-R12-CV, 2002 WL 31840689, at *2-4 (Tenn. Ct. App. Dec. 19, 2002), this court held that centrally assessed pipelines should be classified as personal property under the existing statutory definitions and the common law of fixtures. On May 18, 2004, the General Assembly enacted Chapter 719 to amend Tenn. Code Ann. § 67-5-501 to modify the definition of real property to include such pipeline property.[3] *Morgan*,

---

[2] Colonial also points to the use of the term "permitted or authorized" in Tenn. Code Ann. § 67-5-501(10)(B)(i) concerning railroad property. The parties stipulated that railroad track property owned by Class 1 railroads is uniformly classified by OSAP as real property, regardless of whether the railroad yard is owned by the railroad in fee simple. As the ALJ pointed out, Colonial limited its equalization claim to its centrally assessed pipeline property "located on another party's property by license, right of way or easement." The company did not "make a straight-faced argument that pipeline or track on land they own is tangible personal property." The ALJ reasoned that, "The legislature had neither reason nor need to codify the already commonly understood and completely non-controversial premises that pipeline on Colonial's own land is real property and that railroad tracks on railroad-owned land are real property." (Nonetheless, as the ALJ noted, we cannot ignore the "permitted or authorized" language.)

[3] Because the statute is not ambiguous, we need not consult the legislative history. We note, however, that the legislative history reflects that Chapter 719 was intended to overturn the holding of *ANR Pipeline*. A sponsor of the legislation stated:

> [F]or the last 25 years the structures that are buried in the ground, or towers and things of that nature that are attached to the ground, have been assessed as real property. And there was a law decision, a court case, the Court of Appeals ruled in favor of the pipelines to change that to personal property. It has always been the intention of the assessments to treat those as real property and this bill will clarify that intention, and it names all of the different things that we think that's a possibility of having court cases. There is no intention

263 S.W.3d at 834; *see also Hermann Holtkamp Greenhouses, Inc. v. Metro. Nashville & Davidson Cnty.*, No. M2009-00345-COA-R3-CV, 2010 WL 366697, at *8 n.12 (Tenn. Ct. App. Feb. 2, 2010).

Citing the two statutory exclusions for "propane tanks for residential use and above ground storage tanks that can be moved without disassembly and are not affixed to the land," Colonial emphasizes that the legislature did not exclude from the definition of real property piping used in manufacturing or petroleum processing that conveys substances. No exemption or exclusion is necessary, however, because, for the reasons discussed above, the language of Chapter 719 does not include such piping.[4]

For the foregoing reasons, we conclude that the BOE correctly determined that Tenn. Code Ann. § 67-5-501(10)(B)(iii) applies to the pipelines owned by Colonial but does not apply to locally assessed piping used in the manufacturing or refining process.

II. "As applied" constitutional and equalization claims.

Colonial makes two arguments here: an equal protection challenge to Chapter 719 and a request for relief under the uniform taxation provisions of the Tennessee Constitution.

Equal protection "does not require absolute equality from the State and its political subdivisions," *Posey v. City of Memphis*, 164 S.W.3d 575, 578-79 (Tenn. Ct. App. 2004), but it does require "'that persons similarly situated be treated alike,'" *Osborn v. Marr*, 127 S.W.3d 737, 741 (Tenn. 2004) (quoting *Gallaher v. Elam*, 104 S.W.3d 455, 461 (Tenn. 2003)). The determination of "'what is "different" and what is "the same" resides in the legislatures of the States, and legislatures are given considerable latitude in determining what groups are different and what groups are the same.'" *Tenn. Small Sch. Sys. v. McWherter*, 851 S.W.2d 139, 153 (Tenn. 1993) (quoting *Doe v. Norris*, 751 S.W.2d 834, 841 (Tenn. 1988) (other citation omitted)). Colonial asserts that the continued "classification of locally assessed piping at the favorable 'personal' property class, notwithstanding the clear and unambiguous language of Chapter 719, while the piping of centrally assessed taxpayers like Colonial are classified at the unfavorable 'real' property

---

of the State or the Comptroller or the local governments to increase anyone or change anyone from where they have been doing them for the past 25 years.

House Floor Session, 103rd General Assembly, 2nd Reg. Sess., Tape H-40 (Mar. 31, 2004) (statement of Rep. Head).

[4] The Tennessee Supreme Court has stated that, "[e]very word in a statute 'is presumed to have meaning and purpose, and should be given full effect if so doing does not violate the obvious intention of the Legislature.'" *Waters v. Farr*, 291 S.W.3d 873, 881 (Tenn. 2009) (quoting *In re C.K.G.*, 173 S.W.3d 714, 722 (Tenn. 2005)). In this instance, the intention of the legislature is not ambiguous and the exceptions or exclusions in question are mere surplusage.

class" violates equal protection. As discussed above, however, the Board properly interpreted the language of Chapter 719 as not applicable to most locally assessed piping, which is not "permitted or authorized." Colonial's "as applied" equal protection challenge to Chapter 719 rests upon a flawed understanding of the statute's reach, and we find no merit in the argument.

More significant is Colonial's argument that, pursuant to Tenn. Code Ann. § 67-5-1302(b)(1)[5] and article 2, section 28 of the Tennessee Constitution, the company is entitled to tax equalization relief. Colonial specifically requests that its "pipelines in the land of another by easement or license" be reclassified as personal property. In 1972, article 2, section 28 of the Tennessee Constitution was amended, in part, to include the following provision:

> The ratio of assessment to value of property in each class or subclass shall be equal and uniform throughout the State, the value and definition of property in each class or subclass to be ascertained in such manner as the Legislature shall direct. Each respective taxing authority shall apply the same tax rate to all property within its jurisdiction.

*See also In re All Assessments*, 58 S.W.3d at 97. The constitutional amendment divided property for taxation purposes into "real property, tangible personal property and intangible personal property" and subdivided tangible personal property into public utility property (assessed at 55% of value), industrial and commercial property (assessed at 30% of value), and all other tangible personal property (assessed at 5% of value). TENN. CONST. art. II, § 28; Tenn. Code Ann. § 67-5-901(a).

As Colonial points out, our Supreme Court determined in *In re All Assessments*[6] that the BOE has the authority to reduce the appraised (and assessed) value of centrally assessed

---

[5] Tennessee Code Annotated section 67-5-1302(b)(1) states:

> The assessments of public utility property or property of modern market telecommunications providers, as set by the comptroller of the treasury in accordance with subsection (a), shall be adjusted, where necessary, on the basis of appropriate ratios, as are determined by the board of equalization for purposes of equalizing the values of such property to the prevailing level of value of property in each jurisdiction; provided, that no equalization factor for purposes of this section may exceed a factor of one (1.000).

[6] In *In re All Assessments*, county taxing authorities challenged the BOE's decision to reduce the value of centrally assessed public utility tangible personal property by 15% to compensate for the effect of depreciation tables for commercial and industrial tangible property that resulted in the undervaluing of locally assessed industrial and commercial tangible personal property. *In re All Assessments*, 58 S.W.3d at 96. Our Supreme Court held that, under the 1972 amendments to article 2, section 28 of the Tennessee Constitution, the BOE has the legal authority to make such reductions in the assessed value of centrally assessed public utility tangible personal property in order to equalize "the ratio of the appraised value to

public utility property as part of the equalization process. *In re All Assessments*, 58 S.W.3d at 95; *see also* Tenn. Code Ann. § 67-5-1509(b). To support its argument for equalization relief, Colonial cites statements made by the chancery court in its memorandum and final order denying the company's facial constitutional challenge. The chancellor did not, however, reach the "as applied" constitutional issues, which were expressly reserved for the BOE's consideration. At the administrative hearing, the examples of locally assessed piping[7] presented by Colonial did not involve piping placed pursuant to permission or authorization. Colonial argues that it is entitled to equalization "provided that Chapter 719 is applicable to all piping capable of conveying any substance, whether centrally or locally assessed." In its final order, the BOE adopted the finding of the ALJ that "whether locally assessed commercial and industrial pipe is correctly classified as real property or personal property requires a case-by-case analysis and application of the law of fixtures to the relevant facts." We agree with the conclusion of the BOE. As previously discussed, Chapter 719 does not generally apply to locally assessed piping because that piping is on the owner's property.

### III. Deposition errata

Colonial's final argument is that the ALJ "should have completely disregarded" the deposition errata sheet of Greg Moody in making his decision. For the reasons discussed below, we find no error.

As part of his initial decision and order dismissing Colonial's appeal, the ALJ incorporated several attachments. The attachment at issue here, attachment B, includes a detailed summary of the facts and includes the following statement:

> DPA [Division of Property Assessment] employee Greg Moody testified that locally assessed pipeline is assessed as commercial and industrial tangible personal property. On the errata sheet to the deposition, Moody added the qualified, "unless [it is] classified as real property."

In a footnote to this statement, the ALJ noted: "Because Colonial's interpretation of Tenn. Code Ann. § 67-5-501(10)(B)(iii) is wrong, there is no need to resolve the question of

---

fair market value of public utility property in any particular county with the corresponding ratio for industrial and commercial property in that county." *Id.* at 102. The present case does not involve a disparity in the assessment of centrally assessed and locally assessed property within a classification, such as real property or tangible personal property. Rather, Colonial asserts that Chapter 719 has not been applied equally to centrally assessed and locally assessed taxpayers and, as discussed in this opinion, that argument is without merit. By its terms, Chapter 719 does not apply to most locally assessed taxpayer pipes.

[7] The main examples were a manufacturer piping paint from one part of its building to a robotic painter; a gas station's piping covering a short distance from its tanks to its pumps; petroleum storage facilities using piping to transport the product from one part of a facility to another.

whether the errata sheet qualifier was a substantive change and/or the question of whether the errata sheet qualifier was appropriate." Pursuant to Tenn. R. App. P. 36(b), an error is not grounds for reversal unless it "more probably than not affected the judgment." The ALJ's footnote indicates that the deposition errata sheet did not affect the ALJ's decision to deny Colonial's appeal.

CONCLUSION

The judgment of the Board of Equalization is affirmed. Costs of this appeal are assessed against the appellant, Colonial Pipeline Company, for which execution may issue if necessary.

_/s/Andy D. Bennett_____
ANDY D. BENNETT, JUDGE