**NORTHWEST AIRLINES, INC.; Federal Express Corporation; American Airlines, Inc.; and Delta Airlines, Inc., Petitioners,**

v.

**TENNESSEE STATE BOARD OF EQUALIZATION, Respondent.**

Supreme Court of Tennessee, at Nashville.

Aug. 30, 1993.

James W. McBride, Heiskell, Donelson, Bearman, Adams, Williams & Kirsch, Washington, DC, Stephen D. Goodwin, Janis M. Wild, Heiskell, Donelson, Bearman, Adams, Williams & Kirsch, Memphis, for petitioners.

Charles W. Burson, Atty. Gen. and Reporter, Jimmy G. Creecy, Chief Sp. Counsel, Daryl J. Brand, Sr. Counsel, Tax Div., Nashville, for respondent.

## OPINION

DROWOTA, Justice.

Pursuant to Rule 23 of the Rules of the Tennessee Supreme Court, the United States Court of Appeals for the Sixth Circuit has certified the following questions to this Court:

1. Does Tennessee provide any forum to the air carriers other than a hearing before the State Board of Equalization, provided by Tennessee Code Annotated § 67-5-1328, with review of its decision by a petition to review to the Middle Division of the Court of Appeals under Tennessee Code Annotated § 4-5-322(b)(1)?

2. As an alternative to the review provided by Tennessee Code Annotated § 4-5-322(b)(1), does Tennessee law authorize the airlines to pay the tax under protest and sue for a refund in circuit court?

3. If Tennessee provides an alternative forum, what is that forum and what must the carriers do procedurally to have their claim heard?

4. If Tennessee has an alternative forum (or fora), what bodies, if any, have jurisdiction to review the decision?

This Court accepts certification under the provisions of its Rule 23.

## FACTUAL AND PROCEDURAL HISTORY

The petitioners are commercial air carrier companies that do business in the state of Tennessee. Each of them owns certain personal property, consisting of airplanes and related equipment, that is subject to ad valorem taxation pursuant to the provisions of T.C.A. § 67-5-1301, et seq.

The petitioners instituted a proceeding in the United States District Court for the Middle District of Tennessee in which they seek to restrain and enjoin the assessment and collection of property taxes on their equipment for tax year 1990. They also seek a declaratory judgment, pursuant to 28 U.S.C. § 2201, that the 1990 assessment violates 49 U.S.C.App. § 1513(d) of the Airport and Airway Improvement Act.[1] This federal statute prohibits valuation of air carrier company property for property tax purposes at a higher ratio to "true market value" than that ratio that applies for other commercial and industrial property of the same type in the same taxing jurisdiction.

The U.S. District Court (Judge Thomas A. Wiseman, Jr.) granted a Motion to Dismiss filed by the Tennessee State Board of Equalization. The U.S. District Court granted that motion based on the Tax Injunction Act, 28 U.S.C. § 1341. That federal statute provides as follows:

"The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under state law where a plain, speedy and efficient remedy may be had in the courts of such State."

The U.S. District Court stated that the parties did not dispute that (1) the plaintiffs' claim "would ordinarily be barred by the Tax Injunction Act," and (2) "facially the remedy provided in Tennessee is plain, speedy and efficient" for purposes of the Tax Injunction Act. The U.S. District Court rejected the petitioner's argument that such a remedy was not in fact available due to the State Board of Equalization's bias; the petitioner's contend that such bias exists because, in other litigation, the State Board of Equaliza-

1. Prior to filing their federal court action, the petitioner airlines filed petitions before the Tennessee State Board of Equalization seeking relief and raising the same issues under 49 U.S.C.App. § 1513(d) that are raised in the complaint filed in the U.S. District Court.

tion has taken a position contrary to that taken by the petitioners in this case.

## OUR ANALYSIS

Most commercial and residential real and personal property in Tennessee is assessed and valued for property tax purposes by local (county and municipal) authorities pursuant to the provisions of T.C.A. § 67–5–101, et seq.

Part 13 of Chapter 5 of Title 67 of Tennessee Code Annotated, entitled "Classification and Assessment—Utilities and Carriers," contains a special set of statutory provisions that governs the assessment and collection of property taxes with respect to property owned by certain public utilities and common carriers. T.C.A. § 67–5–1301(a) provides, in pertinent part, as follows:

"The public service commission, hereinafter called the commission, is authorized and directed to assess for taxation, for state, county, and municipal purposes, all of the properties of every description, tangible and intangible, within the state, owned by and all personal property used and/or leased by the following named persons hereinafter referred to as companies, namely:

"... (12) Commercial air carrier companies holding a certificate of convenience and necessity from the public service commission, civil aeronautics board, federal aviation administration or any other federal or state regulatory agency excepting those companies whose operations are solely chartered operations."

Pursuant to the provisions of T.C.A. §§ 67–5–1302(b)(1) and 67–5–1606(c), the value of commercial air carriers' property that is assessed by the public service commission is adjusted so that the value of such property within each local tax jurisdiction bears the same ratio to fair market value as does the property within such local jurisdiction that is appraised and assessed by local taxing authorities. This process is generally referred to as "equalization."

Pursuant to T.C.A. § 67–5–1303, commercial air carriers and other companies subject to ad valorem taxation under these statutory provisions are required to file with the Public Service Commission schedules describing property owned (or leased) by them that is subject to taxation. These schedules are to be filed annually on or before April 1st of each year.

Assessments made by the Public Service Commission are reviewed by the State Board of Equalization. In this regard, T.C.A. § 67–5–1328(a)(1) provides, in part, as follows:

"The state board of equalization shall proceed to examine such assessments as made by the commission, and is authorized to increase or diminish the valuation placed upon any property valued by the commission, and is further authorized to require of the commission any additional evidence touching one (1) or more of the properties assessed, and shall consider such additional evidence so furnished in fixing the correct value of any property so assessed, and the assessments shall not be deemed complete until corrected and approved by the board."

Valuation of property by the State Board of Equalization is certified to the Public Service Commission pursuant to T.C.A. § 67–5–1329(a), which provides as follows:

"On or before the third Monday in October, the state board of equalization shall certify to the commission the valuation fixed by it upon each property assessed under this part. The action of the board in fixing the valuation upon such property shall be conclusive and final and the valuation so fixed shall be assessed against such property and the taxes due thereunder be paid."

A taxpayer's right to challenge a valuation or assessment made by the State Board of Equalization is provided by T.C.A. § 67–5–1329(b), which provides as follows:

"(b) If any railroad or public utility has been or shall hereafter be aggrieved at the assessment so fixed and certified by the board, *such railroad or public utility shall be required to pay the taxes due and owing the state, counties and municipalities, upon the full value of the assessment, under protest,* and upon termination of any proceedings that may be instituted in any of the courts of this state or in any of the

courts of the United States by such railroad or public utility to review such assessment, the state, counties and municipalities, and any school district, road district or other taxing district to which such taxes have been paid, shall refund in cash and with interest such part of the taxes so paid to them as may be adjudged to be excessive or illegal by any final decree or order entered in any such proceeding, or in default of such refund, such railroad or public utility is authorized to take credit for the amount of such illegal or excessive tax with interest against any tax thereafter becoming due from and payable by such railroad or public utility, to the state or any county, municipality, road district, school district, or any other taxing district authorized by law to levy taxes." (Emphasis added.)

Pursuant to T.C.A. § 67–5–1331(a), the Public Service Commission is required to certify to the appropriate county and municipal authorities the valuation of property received by it from the State Board of Equalization. The taxes that are due to a county or city, pursuant to T.C.A. § 67–5–1334, "shall be collected as any other county or city taxes may be collected by law and at the rate fixed by such county or city." (The amount of any tax due to the state, if any, is, pursuant T.C.A. § 67–5–1331(b), collected by the Public Service Commission.)

The operation of T.C.A. §§ 67–5–1301, et seq., was described by this Court in *Southern Railway Co. v. State Board of Equalization*, 682 S.W.2d 196 (Tenn.1984). We stated therein as follows:

"The railroad companies here are interstate carriers subject to ad valorem taxation pursuant to T.C.A. § 67–901 (now § 67–5–1301) which authorizes and directs the Tennessee Public Service Commission (Commission) to assess for taxation 'all of the properties of every description, tangible and intangible, within the state, owned by and all personal property used and/or leased by' various companies, including railroads. The State Board of Equalization is authorized to review the Commission's assessments, and may increase or diminish the valuations. T.C.A. § 67–932 (now § 67–5–1328). The Board's valua-

tions are then certified to the Commission as conclusive and final, but the assessed taxes may be paid under protest and court review may be sought. T.C.A. § 67–933 (now § 67–5–1329). Review is pursuant to the Uniform Administrative Procedures Act, T.C.A. § 4–5–101 et. seq., and is conducted without a jury and confined to the record if no procedural irregularities are alleged. T.C.A. § 4–5–117(g) (now § 4–5–322(g)). Reversal or modification of the agency's order is allowed, in one instance, when the reviewing court finds that the administrative decision is not supported by substantial and material evidence in light of the entire record. T.C.A. § 4–5–117(h)(5) (now § 4–5–322(h)(5))".

682 S.W.2d 196 at 197.

Subsequent to our decision in *Southern Railway Co. v. State Board of Equalization, supra*, T.C.A. § 4–5–322(b), which is part of the Uniform Administrative Procedures Act, was amended by Public Acts 1986, Chapter 738. That statute now provides, in pertinent part, as follows:

"(b)(1) Proceedings for review are instituted by filing a petition for review in the chancery court of Davidson County, unless another court is specified by statute. Such petition shall be filed within sixty (60) days after the entry of the agency's final order thereon.... A person who is aggrieved by any final decision of the public service commission, or by a final decision of state board of equalization in a contested case involving centrally assessed utility property assessed in accordance with title 67, chapter 5, part 13, shall file any petition for review with the middle division of the court of appeals."

T.C.A. § 4–5–103(b) and (c), which are part of the Uniform Administrative Procedures Act, provide, in pertinent part, as follows:

"(b) ... In any ... case of conflict between this chapter and any statute, whether general or specific, this chapter shall control, however, compliance with the procedures described by this chapter does not obviate the necessity of complying with procedures prescribed by other provisions of this code.

(c) nothing in this chapter shall be held to modify or repeal the statutes with respect to payment of taxes under protest and suits for recovery thereof."

Thus, notwithstanding the provisions of any other statutes, the proper procedure to challenge the assessment of centrally assessed commercial air carrier property taxes is to pay them under protest (T.C.A. § 67–5–1329(b)) and to file a petition for review with the Middle Division of the Court of Appeals (T.C.A. § 4–5–322(b)(1)). *See Ogden v. Kelley,* 594 S.W.2d 702 (Tenn.1980); *Metropolitan Government of Nashville and Davidson County v. Shacklett,* 554 S.W.2d 601 (Tenn. 1977).

While the choice of methods for contesting the validity of taxes that are assessed pursuant to T.C.A. § 67–5–1301, et seq. is extremely limited, once a taxpayer is in the proper forum, a wide variety of types of objections may be raised. These include objections based on federal and state constitutional provisions, statutes and case law. *See L.L. Bean, Inc. v. Bracey,* 817 S.W.2d 292 (Tenn.1991) (dealing with taxes that are collected by the Department of Revenue pursuant to T.C.A. §§ 67–1–1801, et seq.).

## CONCLUSION

We answer the questions certified to us by the United States Court of Appeals for the Sixth Circuit as follows:

1. Does Tennessee provide any forum to the air carriers other than a hearing before the State Board of Equalization, provided by Tennessee Code Annotated § 67–5–1328, with review of its decision by a petition to review to the Middle Division of the Court of Appeals under Tennessee Code Annotated § 4–5–322(b)(1)? No.

2. As an alternative to the review provided by Tennessee Code Annotated § 4–5–322(b)(1), does Tennessee law authorize the airlines to pay the tax under protest and sue for a refund in circuit court? No.

In light of our response to questions 1 and 2 above, questions 3 and 4 are pretermitted because they are not applicable.

The Clerk will transmit this opinion in accordance with Rule 23, Section 8 of the Rules of the Supreme Court. The costs in this Court will be taxed equally between the Petitioners and the Defendant.

REID, C.J., and O'BRIEN, DAUGHTREY and ANDERSON, JJ., concur.