**Judith WILSON, Plaintiff–Appellant,**

v.

**Philip BREDESEN, in his official capacity as Governor of the State of Tennessee, Paul Summers, in his official capacity as the Attorney General for the State of Tennessee, John Morgan, in his official capacity as Comptroller of the State of Tennessee, and The Tennessee Board of Equalization, Defendants–Appellees.**

No. 03–6130.

United States Court of Appeals, Sixth Circuit.

Sept. 17, 2004.

the Equal Protection Clause of the Fourteenth Amendment. Because the procedures available to challenge this tax in the administrative agencies and courts of the State of Tennessee are plain, speedy and efficient, the Tax Injunction Act prohibits her from challenging the tax in federal district court. We therefore affirm the dismissal of this case for lack of jurisdiction.

## I.

The Tennessee Constitution divides property into three classes for taxation purposes: real property, tangible personal property and intangible personal property. Tenn. Const. art. II, § 28. Real property is subdivided into public utility property (assessed at 55% of its value), industrial and commercial property (assessed at 40%), residential property (assessed at 25%), and farm property (also assessed at 25%). *Id.* The State likewise assesses tangible personal property at different values depending upon its classification. Tennessee also groups taxpayers into two different categories—those assessed centrally and those assessed locally. The state comptroller's office, for example, centrally assesses the taxes of public utilities and common carriers. Tenn.Code Ann. § 67–5–1301(a). Counties, by contrast, locally assess residential owners and other business taxpayers. Tenn.Code Ann. §§ 67–5–102, –103; *see also In re All Assessments,* 67 S.W.3d 805, 813 (Tenn.Ct. App.2001).

Before: SUTTON and COOK, Circuit Judges; and ALDRICH, District Judge.*

SUTTON, Circuit Judge.

Judith Wilson, a Tennessee resident and taxpayer, claims that a state tax violates

In an attempt to promote uniformity among locally assessed taxes, the Tennessee Board of Equalization ("the Board") promulgated tax schedules known as the "Board Rules" in 1989. D. Ct. Op. at 3. Two years later, the Tennessee legislature

---

* The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation.

preempted the Board Rules covering locally assessed business personal property by passing § 67–5–903(f) of the Tennessee Code. Because the tables in § 67–5–903(f) value locally assessed business personal property at lower depreciation rates than the Board Rules do, public utility companies complained that their personal property continued to be taxed at 100% of its property value. *Id.* In response to these complaints, among others, Tennessee county and city governments asked the Board to continue to apply the Board Rules, thereby returning the business personal property rates to their previously higher levels. Pointing to the superseding legislation, the Board refused to do so but in the process it granted a 15% reduction to the public utilities. In spite of this reduction, the local governments appealed the Board's refusal to disregard the statute to the Tennessee state courts. In two companion cases, *In re All Assessments,* 67 S.W.3d at 807, and *Williamson County v. Tennessee State Board of Equalization,* 86 S.W.3d 216, 218—19 (Tenn.Ct.App. 2001), a Tennessee court of appeals upheld the constitutionality of § 67–5–903(f) but recognized the Board's authority to grant rate reductions. In the aftermath of these cases and other rate reductions granted by the Board, all business personal property in Tennessee currently is valued at approximately 85% of its base value, while non-business personal property currently is valued at 100% of its base value. D. Ct. Op. at 4.

Judith Wilson lives in Davidson County, Tennessee, where she owns a home. In accordance with current Tennessee law, county tax officials assessed her residence at 100% of its value, while they assessed business personal property at only 85% of its value. Relying on this disparity, Wilson filed a declaratory-judgment action in the United States District Court for the Middle District of Tennessee, seeking a declaration that § 67–5–903(f) violates the equal protection guarantees of the Fourteenth Amendment. The district court dismissed the case for lack of jurisdiction. Observing that Tennessee provides a plain, speedy and efficient procedure for challenging unconstitutional or otherwise-improper taxes through its administrative agencies and courts, the district court concluded that the Tax Injunction Act, 28 U.S.C. § 1341, barred Wilson from filing the claim in federal court.

II.

Under the Tax Injunction Act, "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. Designed " 'to limit drastically federal district court jurisdiction' " over " 'the collection of [local] taxes,' " *California v. Grace Brethren Church,* 457 U.S. 393, 408–09, 102 S.Ct. 2498, 73 L.Ed.2d 93 (1982) (quoting *Rosewell v. LaSalle National Bank,* 450 U.S. 503, 522, 101 S.Ct. 1221, 67 L.Ed.2d 464 (1981)), and " 'to promote comity and to afford states the broadest independence, consistent with the federal constitution, in the administration of their . . . revenue raising,' " *Hedgepeth v. Tennessee,* 215 F.3d 608, 611 (6th Cir. 2000) (quoting *Wright v. McClain,* 835 F.2d 143, 144 (6th Cir.1987)), the Act requires States only to satisfy "certain minimal procedural criteria" to show that they provide a "plain, speedy and efficient remedy" for allegedly invalid taxes. *Rosewell,* 450 U.S. at 512 (emphasis omitted). A State meets these modest criteria when it provides "a full hearing at which a taxpayer may present and secure a judicial determination at which he or she may raise any and all constitutional objections to the tax." *Hedgepeth,* 215 F.3d at 615. The

strictures of the Act apply with equal force to injunction actions and to declaratory-judgment actions. *Grace Brethren Church*, 457 U.S. at 408.

Measured by this test, Wilson's action fails. Tennessee, to start with, gives taxpayers an opportunity for a full hearing at which they may raise constitutional objections to tax statutes. They may appeal a local assessment through agency proceedings in a county board of equalization or in the State Board of Equalization. Tenn. Code Ann. § 67–5–1402 (appeals to the county board); Tenn.Code Ann. §§ 67–5–1412, –1501 (appeals to the State Board). From there, if still dissatisfied, they may seek judicial review of a final decision in state court. Tenn.Code Ann. § 4–5–322(a)(1); *Richardson v. Tennessee Bd. of Dentistry*, 913 S.W.2d 446, 455 (Tenn. 1995). This judicial review (in the trial court and in the appellate courts) covers both "the resolved issues and [ ] those issues that the agency refused or was without authority to consider," including questions of "the constitutionality of a statute regardless of whether [they were] raised at the agency level." *Richardson*, 913 S.W.2d at 456–57.

Proving that the Tennessee legal system permits challenges to unconstitutional taxes, other litigants have challenged the very statute Wilson seeks to invalidate here. In *In re All Assessments*, 67 S.W.3d at 807, and *Williamson County*, 86 S.W.3d at 218, the Tennessee Court of Appeals rejected challenges by local governments to the constitutionality of § 67–5–903(f)—not because such challenges were prohibited as a matter of procedure but because the appellate court disagreed with the challenges as a matter of constitutional law. As these cases illustrate, taxpayers (like Wilson) and others may indeed challenge the constitutionality of state taxes through the Tennessee courts and administrative agencies. And of course the state-court "remedy" to which the Tax Injunction Act refers is not a victory for the litigant but merely an opportunity to obtain relief—with review by the United States Supreme Court on the horizon when relief is denied.

In response, Wilson complains that "the unusual structure of the administrative review process in Tennessee" limits the scope of agency authority and of judicial review of agency determinations—all of which, she claims, deny her a plain, speedy and efficient remedy. Appellant Br. at 13, 16–18. State law, it is true, places limits on the authority of administrative agencies. Because "[a]n administrative agency is a creation of the legislature, . . . administrative agencies have no authority to determine the facial constitutionality of a statute" but rather may determine only "the constitutionality of the application of statutes." *Richardson*, 913 S.W.2d at 454, 455. The State, it is also true, places limits on judicial review of agency decisions. Tennessee courts defer to agency decisions " 'when [the agencies] are acting within their area of specialized knowledge, experience, and expertise,' " *Willamette Indus., Inc. v. Tennessee Assessment Appeals Comm'n*, 11 S.W.3d 142, 147 (Tenn. Ct.App.1999) (quoting *Wayne County v. Tennessee Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 279 (Tenn.Ct.App. 1988)), meaning that the courts will uphold an "agency's factual determination . . . if there exists 'such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration.' " *Id.*

But these unexceptional features of Tennessee administrative law do not establish that the State fails to provide a plain, speedy and efficient remedy for tax challenges. For one, a reviewing court need not defer to administrative findings that

are not supported by the record. Tenn. Code Ann. § 4–5–322(h)(5). For another, Tennessee courts subject an agency's determination of constitutional questions, such as the equal protection challenge asserted here, to de novo review. *State v. Robinson*, 29 S.W.3d 476, 480 (Tenn.2000). Wilson, in short, is simply mistaken in arguing that she does not have a state avenue for bringing a constitutional challenge—whether a facial challenge or an as-applied challenge—to this tax or to any other tax imposed by the Tennessee legislature.

Turning from state precedent to federal precedent, Wilson argues that we permitted a taxpayer to bring a similar challenge in district court in *Northwest Airlines, Inc. v. Tennessee State Board of Equalization*, 11 F.3d 70 (6th Cir.1993). *Northwest Airlines*, however, is the exception that proves the rule. The "peculiar" and "unique" facts of the case presented "a rare exception" to the jurisdictional bar established by the Tax Injunction Act for one reason. *Id.* at 71, 73. In that case, the Tennessee Board of Equalization had taken a factual position on the assessment level of personal property in an unrelated case pending in federal court, and the position conflicted with the position of the airlines when they appeared before the Board. *Id.* at 72–73. In this unusual context, the court held that the Board's concurrent litigation position "preclud[ed] it from properly considering the evidence submitted by the airlines in support of their claims" before the Board. *Id.* at 73–74.

Wilson does not face a comparable problem. She does not claim that the Board is participating in other related litigation in federal court, and she does not claim that the Board lacks the neutrality to decide a factual issue related, say, to a Board valuation. Instead, she asks the federal district court to decide "whether a state statute is constitutional pursuant to the Fourteenth Amendment of the United States Constitution," Compl. at 2, which is classically the type of claim covered by the Tax Injunction Act. Even if the Board had taken a position contrary to her on *this* issue, moreover, the Board's position is a legal one subject to de novo review in state court, which again would provide her an ample avenue of state relief. The Tax Injunction Act applies and bars the filing of this constitutional challenge in federal district court.

## III.

For these reasons, we affirm.