*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0006p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

COLONIAL PIPELINE COMPANY,

*Plaintiff-Appellant,*

v.

No. 06-5220

JOHN G. MORGAN, Tennessee Comptroller of the
Treasury, Individually and as a Member of the
Tennessee State Board of Equalization, et al.,

*Defendants-Appellees.*

---

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 05-00148—Robert L. Echols, Chief District Judge.

Argued: December 6, 2006

Decided and Filed: January 9, 2007

Before: MOORE and CLAY, Circuit Judges; BELL, Chief District Judge.[*]

---

## COUNSEL

**ARGUED:** Ron L. Quigley, DAVIS, MATTHEWS & QUIGLEY, Atlanta, Georgia, for Appellant.
Charles L. Lewis, OFFICE OF THE ATTORNEY GENERAL, Nashville, Tennessee, for Appellees.
**ON BRIEF:** Ron L. Quigley, DAVIS, MATTHEWS & QUIGLEY, Atlanta, Georgia, for Appellant.
Charles L. Lewis, OFFICE OF THE ATTORNEY GENERAL, Nashville, Tennessee, for Appellees.

---

## OPINION

---

CLAY, Circuit Judge. Colonial Pipeline Company ("Colonial") appeals the district court's
dismissal of its complaint under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.
Colonial challenges the constitutionality of Tennessee's statutory scheme for classifying real and
personal property for purposes of *ad valorem* tax assessment under the Equal Protection Clause of
the Fourteenth Amendment of the United States Constitution; Article I, Section 8, Clause 3 (the
Commerce Clause) of the United States Constitution; Article VI, Clause 2 (the Supremacy Clause)
of the United States Constitution; and Article I, Section 8 and Article XI, Section 8 of the Tennessee

---

[*] The Honorable Robert Holmes Bell, Chief United States District Judge for the Western District of Michigan,
sitting by designation.

State Constitution.  The district court found that the Tax Injunction Act, 28 U.S.C. § 1341, and comity principles bar Colonial from suing in federal court.  For the following reasons, we **AFFIRM** the district court's decision.

## BACKGROUND

Colonial is a corporation "engaged in interstate commerce as a common carrier of refined petroleum products and operates a large diameter refined petroleum pipeline extending from Pasadena, Texas, to Linden, New Jersey (New York Harbor), with stub lines serving parts of Tennessee." (J.A. 26) Colonial's pipeline "is the largest refined petroleum products pipeline in the world," (J.A. 30), and serves as a "transportation system for . . . heating oil, diesel fuel, kerosene, jet fuel and gasoline." (J.A. 29) Colonial has operated the pipeline in Tennessee for more than forty years.

Under Tennessee Code Annotated ("T.C.A.") § 67-5-501(8)(G), "Colonial's real and personal property is classified and assessed as public utility property." (J.A. 30)  Under T.C.A. § 67-5-1301(a)(7), Colonial's property "is appraised and assessed by the Comptroller of the Treasury, Office of State Assessed Properties" ("OSAP"). (J.A. 30)  OSAP appraises Colonial's property as a single unit pursuant to T.C.A. § 67-5-1302. "The unit value of Colonial, which traverses thirteen states, is apportioned to Tennessee by a recognized apportionment formula." (J.A. 30; *see* T.C.A. §§ 67-5-1322 and 67-5-1323)  "OSAP then applies the public utility assessment percentage of 55% to Tennessee's share of Colonial's unit value." (J.A. 30)

The record indicates that in the 1990s, airlines and railroads sued the Tennessee State Board of Equalization ("the Board" or "the State Board") "seeking ad valorem tax relief in the form of equalization of ad valorem taxes." (J.A. 31-32)  Prior to this legal action, "all public utility operating property in Tennessee was assessed at 55% of its equalized value, whether real property or person property." (J.A. 32)  On September 30, 1997, the lawsuit resulted in "a new form of equalization adjustment factor to the personal property portion" of public utility property. (J.A. 33; 137)

The classification of Colonial's property as either real or personal property before September 30, 1997 is not legally significant because both the real and personal property of public utility companies was assessed and taxed at the same rate prior to the equalization adjustment. (J.A. 137; Def. Br. at 6)  "On October 9, 1997, Colonial applied to the State Board to classify Colonial's operating pipeline property in Tennessee as personal property." (J.A. 33)  "Subsequently, OSAP recommended to the State Board that substantially all of Colonial's operating pipeline property be classified as real property, thereby substantially depriving Colonial of the equalization relief afforded to personal property by the State Board's Order of September 30, 1997." (J.A. 33)  The Board consolidated numerous pipeline classification appeals and on January 25-27, 1999, an administrative law judge ("ALJ") conducted a hearing on the appeals. On January 14, 2000, the ALJ upheld the pipeline classification as real property.  On February 14, 2000, Colonial appealed to the Board.  The Board held a hearing on January 31, 2001, and affirmed the ALJ's decision on March 14, 2001.  On May 11, 2001, Colonial appealed the Board's decision to the Tennessee Court of Appeals.  On December 19, 2002, the Tennessee Court of Appeals reversed the Board's decision finding that "the pipelines and surface equipment shall be treated as personal property for purposes of *ad valorem* taxation." *ANR Pipeline Co. v. Tenn. Bd. of Equalization*, No. M2001-01098-COA-R12-CV, 2002 WL 31840689, at *4 (Tenn. Ct. App. Dec. 19, 2002) (unpublished case).[1]  "[O]n

---

[1] In an unrelated action, Colonial challenged Maryland's classification of Colonial's pipeline as real property. "[T]he Maryland Court of Appeals held that the pipeline was personal property under the common law." (J.A. 35; *see Colonial Pipeline Co. v. State Dep't of Assessments and Taxation*, 371 Md. 16, 39 (2002) ("the pipeline system should be classified as personal property for Maryland property tax purposes."))

February 14, 2003, the State Board filed an Application for Permission to Appeal in the Supreme Court of Tennessee." (J.A. 35)  The application was denied on June 30, 2003.  Pursuant to *ANR Pipeline Co.,* OSAP classified Colonial's pipeline as personal property for 2003.

On May 18, 2004, the Tennessee state legislature enacted a law that "effectively nullifies the 2002 decision of the Tennessee Court of Appeals by amending T.C.A. § 67-5-501(9)," and "deprive[s] Colonial of the equalization relief afforded to centrally assessed owners of personal property." (J.A. 37; *see* 2004 Tenn. Pub. Acts, ch. 719 (effective May 18, 2004))  In pertinent part, T.C.A. § 67-5-501(9) was amended as follows:

> For purposes of classification and assessment of property:
> . . .
> (9)(B) **Real property includes**, but is not limited to, the following:
> . . .
> (iii) **Mains, pipes, pipelines and tanks permitted or authorized to be built, laid or placed in, upon, or under any public or private street or place for conducting steam, heat, water, oil, electricity or any property, substance or product capable of transportation or conveyance therein or that is protected thereby**, excluding propane tanks for residential use and above ground storage tanks which can be moved without disassembly and are not affixed to the land[.]

T.C.A. § 67-5-501(9) (emphasis added).

On August 11, 2004, Colonial appealed its 2004 *ad valorem* property tax assessment.  On August 18, 2004, a hearing was held on Colonial's appeal. On September 7, 2004, Colonial received a letter from the Comptroller's officer stating that: "[t]he exception filed on behalf of the company . . . raised issues regarding equalization and classification. . . . The issue of classification is a matter pending litigation." (J.A. 40)  Colonial maintains that the letter indicates that the Board "deems itself not to be the proper forum for an administrative appeal of the classification issued presented by" the amendment to T.C.A. § 67-5-501(9). (J.A. 40)  Colonial filed an appeal with the Board on September 14, 2004.  Since no hearing was scheduled to address the appeal, Colonial sued numerous Tennessee state agencies and officials in federal court on February 24, 2005, alleging that it "ha[d] no plain, adequate, or complete remedy at law to redress the wrongs complained of . . . apart from the filing of this action." (J.A. 41)

In the district court, Colonial argued that the amendment to T.C.A. § 67-5-501(9) deprives it of equalization of the *ad valorem* taxation of its personal property, and maintained that the pipeline classification as real property is arbitrary, capricious, invidiously discriminatory and without a rational relation to any legitimate government interest in violation of the Equal Protection Clause of the Fourteenth Amendment and the Tennessee Constitution.  Colonial contended that while motor carriers – namely, airplanes and trucks – are assessed at a forty percent tax rate for real property and thirty percent for personal property, Colonial's property is assessed at fifty-five percent even though it provides and performs similar transportation and delivery services. "Colonial asserts it is no different from any other transportation company and should be treated the same for property tax purposes." (J.A. 190)  Colonial alleges that since Tennessee's definition of real property was enacted with a discriminatory purpose and results in discriminatory *ad valorem* taxation, the classification constitutes discrimination against and an undue burden on interstate commerce in violation of the Commerce and Supremacy Clauses.

Colonial sought declaratory and injunctive relief.  More specifically, Colonial asked the district court to 1) declare that Tennessee state statutes governing real property classifications,

including T.C.A. § 67-5-501(9), are unconstitutional and unenforceable, and 2) enjoin Tennessee from classifying and assessing Colonial's property in any way other than as provided in *ANR Pipeline Co.*, 2002 WL 31840689, at \*4.

On March 17, 2005, Defendants moved to dismiss Colonial's complaint under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction arguing that the Tax Injunction Act, 28 U.S.C. § 1341, and comity principles barred Colonial from suing in federal court. Defendants maintained that Colonial has a plain, speedy and efficient remedy before the Board and Tennessee state courts. Contrary to Colonial's allegation that no hearing was scheduled to address its appeal, Defendants filed an affidavit from an ALJ assigned to Colonial's appeal indicating that a status conference was held on September 28, 2004. Defendants proffered an affidavit from the Comptroller's office stating that nothing in the September 7, 2004 letter "was intended to indicate that the Board was unable or unwilling to entertain Colonial's appeal of the 2004 assessment." (J.A. 194)

For its part, Colonial maintained that "[a]s shown by the taped transcripts of the [legislative] committee hearings, the individual Defendants, members of the State Board, acting in concert with members of the Tennessee General Assembly, actively pursued legislative activity during the 2004 legislative session which culminated in the passage and signing of Chapter 719, the contents of which are in direct conflict with Colonial's position." (J.A. 195) Colonial filed a motion under Fed. R. Civ. P. 12(d) "asking for an opportunity to discover facts that would support its allegations of federal jurisdiction." (J.A. 196)

On November 10, 2005, in a thirty-two page decision, the district court found that:

> the facts presented to the Court, while lengthy, are relatively simple and substantially undisputed. The only material factual dispute appears to concern the meaning of [the] September 7, 2004 letter. Taking the . . . letter and the other facts in the light most favorable to Colonial, as the Court would ordinarily do on a motion for summary judgment, the Court finds there are no genuine issues of material fact that require a preliminary hearing or trial before the Court may rule on Defendants' Motion to Dismiss under Rule 12(b)(1).

(J.A. 200; *see Colonial Pipeline Co. v. Morgan*, 231 F.R.D. 518, 528 (M.D.Tenn. 2005)) The district court noted that "[t]he Tennessee Court of Appeals previously demonstrated that it can and will consider Colonial's constitutional claims because it ruled in favor of Colonial and other pipelines in reversing the Board's property classification decision in 2002." (J.A. 208) It further noted that

> Colonial's last involvement with the state review process took more than five years from start to finish, but the undisputed record reflects multiple parties were involved in a complex administrative proceeding. Colonial began the state review process again in September 2004, but has allowed the administrative matter to languish while it pursued relief before the Tennessee Tax Study Commission, the Tennessee General Assembly, and in this federal court. Defendants produced evidence that the matter remains pending on the State's administrative proceeding calendar.

(J.A. 209) The court found that a "taxpayer's intentional bypass of state remedies is exactly what the Tax Injunction Act was designed to ward off [,] and the Act bars federal subject matter jurisdiction where taxpayers pursue federal litigation to avoid paying state taxes or to gain a refund of state taxes." (J.A. 202) (alteration in original) (internal quotation marks and citation omitted).

The district court granted Defendants' motion to dismiss holding that "as a matter of law . . . Colonial does have a plain, speedy and efficient remedy and that the Tax Injunction Act bars this suit." (J.A. 201)

On November 28, 2005, Colonial filed a motion for reconsideration. On January 26, 2006, the district court denied Colonial's motion. The district court indicated that "the Court **assumed in Colonial's favor** all of the evidence." (J.A. 58) (emphasis in original). It further indicated that "[m]ost of the information in [Colonial's] reply brief [to Defendants' motion to dismiss] is the same information Colonial now includes within its Memorandum of Law in Support of Plaintiff's Motion to Reconsider and in the hundreds of pages of deposition testimony and exhibits Colonial filed after this case was closed." (J.A. 58) "Colonial has not pointed to any intervening change in controlling law, nor is re-examination of the case necessary to avoid a manifest injustice. The Court carefully considered all of the parties' evidence and legal arguments. The Court's Memorandum and Order expressly addressed each of the points Colonial now seeks to re-argue in its 'Motion to Reconsider.' There is nothing more the Court can add to what it already said." (J.A. 59) Colonial filed a notice of appeal on February 2, 2006.

On appeal, Colonial argues that the district court erred in finding that the Tax Injunction Act was a bar to federal jurisdiction in the instant case. Colonial maintains that Tennessee cannot provide Colonial with a fair and impartial administrative review because the Board has "prejudged the issues, has a pecuniary interest in the outcome of this case, and is not independent of the [Tennessee] executive branch." (Colonial's Br. at 3) In addition, Colonial argues that the Board does not have authority to address the constitutional challenge raised in the instant case, and highlights that its prior appeal took over five years to complete. Last, Colonial argues that the public policy concerns which the Tax Injunction Act was enacted to address are not present in the instant case.

## DISCUSSION

### I.    Standard of Review

This Court reviews *de novo* the dismissal of a complaint under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. *Am. Landfill, Inc. v. Stark/Tuscarawas/Wayne Joint Solid Waste Mgmt. Dist.*, 166 F.3d 835 (6th Cir. 1999). "[E]very federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review." *Greater Detroit Res. Recovery Auth. v. U.S. E.P.A*, 916 F.2d 317, 319 (6th Cir. 1990) (quoting *Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 541 (1986)) (quotation marks omitted).

### II.   The District Court Properly Dismissed Colonial's Complaint for Lack of Subject Matter Jurisdiction

#### 1.    The Tax Injunction Act

The district court properly dismissed Colonial's complaint for lack of subject matter jurisdiction. The Tax Injunction Act prohibits Colonial from challenging T.C.A. § 67-5-501(9) in federal court. In pertinent part, the Tax Injunction Act provides:

> [t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

28 U.S.C. § 1341. The Tax Injunction Act "has its roots in equity practice, in principles of federalism, and in recognition of the imperative need of a State to administer its own fiscal operations." *Tully v. Griffin, Inc.*, 429 U.S. 68, 73 (1976). "A federal district court is under an equitable duty to refrain from interfering with a State's collection of its revenue except in cases where an asserted federal right might otherwise be lost." *Id.* at 73; *see King v. Sloane*, 545 F.2d 7, 8 (6th Cir. 1976) ("The federal courts will not entertain actions for relief from State or local taxes unless federal rights are protected in no other way."); *see also Mandel v. Hutchinson*, 494 F.2d 364, 366 (9th Cir. 1974) ("strong public policy of federal noninterference with state taxation schemes has been statutorily embodied in 28 U.S.C. § 1341."). "By express statutory provision, Congress . . . has directed that federal courts shall not enjoin or restrain the assessment, levy or collection of any tax under state law where a plain, speedy and efficient remedy may be had in the courts of the State." *King*, 545 F.2d at 8. "The overall purpose of the Tax Injunction Act is consistent with the view that the 'plain, speedy and efficient remedy' exception to the Act's prohibition was only designed to require that the state remedy satisfy certain procedural criteria." *Rosewell v. LaSalle Nat. Bank*, 450 U.S. 503, 522 (1981). Since the Tax Injunction Act "limit[s] drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes," *California v. Grace Brethren Church*, 457 U.S. 393, 408 (1982) (quotation marks and citation omitted), a district court does not have jurisdiction over state and local tax matters where a "plain, speedy and efficient remedy" is available in state court. 28 U.S.C. § 1341.

The Supreme Court has interpreted the "plain, speedy and efficient" exception of the Tax Injunction Act narrowly. *See Grace Brethren Church*, 457 U.S. at 413 ("we must construe narrowly the 'plain, speedy and efficient' exception to the Tax Injunction Act"). A state remedy is plain, speedy and efficient if it provides the aggrieved party with a "full hearing and judicial determination at which [a taxpayer] may raise any and all constitutional objections to the tax," with ultimate review available in the United States Supreme Court. *Rosewell*, 450 U.S. at 514 (quotation marks and citation omitted); *see also Hedgepeth v. Tennessee*, 215 F.3d 608, 615 (6th Cir. 2000) ("The state need only provide a full hearing at which a taxpayer may present and secure a judicial determination at which he or she may raise any and all constitutional objections to the tax."). This Court has found that "[t]he plain, speedy and efficient remedy contemplated by [the Tax Injunction Act] merely requires that the state provide certain minimal procedural protections against illegal tax collection." *Hedgepeth*, 215 F.3d at 615 (6th Cir. 2000). "State procedures that call for an appeal to a state court from an administrative decision meet these minimal criteria." *Northwest Airlines, Inc. v. Tenn. State Bd. of Equalization,* 11 F.3d 70, 72 (6th Cir.1993). "The state remedy need not be the best of all possible remedies." *Alnoa G. Corp. v. City of Houston, Tex.*, 563 F.2d 769, 772 (5th Cir. 1977). "[T]he likelihood of plaintiff's success in the state court is not a factor to be considered when determining whether the jurisdictional prohibition of § 1341 applies." *Cities Serv. Gas Co. v. Oklahoma Tax Comm'n*, 656 F.2d 584, 586 (10th Cir. 1981). Although delay in reviewing a taxpayer's claim may be troubling, *Long Island Lighting Co. v. Town of Brookhaven*, 889 F.2d 428, 433 (2d Cir. 1989), "[n]owhere in the Tax Injunction Act did Congress suggest that the remedy just be the speediest." *Rosewell*, 450 U.S. at 520.

## 2.     Tennessee Provides a Plain, Speedy and Efficient Remedy

Colonial argues that A) it does not have a state forum for raising its constitutional challenges to T.C.A. § 67-5-501, and B) Board proceedings are too lengthy to constitute a plain, speedy and efficient state remedy. Colonial's arguments are meritless inasmuch as Colonial has a plain, speedy and efficient state remedy within the meaning of the Tax Injunction Act.

### A.          Colonial Has A State Forum For Raising Constitutional Claims

Under Tennessee law, Colonial may challenge OSAP's property assessment by filing exceptions with the Board.  T.C.A. §§ 67-5-1301(c), 67-5-1327(c) and 67-5-1328(a).  Colonial may raise a broad range of claims before the Board:

> [w]hile the choice of methods for contesting the validity of taxes that are assessed pursuant to T.C.A. § 67-5-1301, et seq. is extremely limited, once a taxpayer is in the proper forum, a wide variety of types of objections may be raised. These include objections based on federal and state constitutional provisions, statutes and case law.

*Northwest Airlines, Inc. v. Tenn. State Bd. of Equalization*, 861 S.W.2d 232, 236 (Tenn.1993); *see also Richardson v. Tenn. Bd. of Dentistry,* 913 S.W.2d 446, 456-57 (Tenn.1995).  In the instant case, the Board's final decision may be appealed to the Tennessee Court of Appeals, and ultimately to the Tennessee Supreme Court or to the United States Supreme Court if federal constitutional issues are involved.  *See* T.C.A. § 4-5-322(b)(1(B)(ii).

Colonial argues that the Board does not have authority to hear its constitutional claims.  This argument is plainly without merit.  To the extent that Colonial raises "as applied" constitutional challenges to T.C.A. § 67-5-501, the Board has authority to hear and decide these claims. *Richardson,* 913 S.W.2d at 456-457.  Admittedly, the Board is not authorized to hear and decide "facial" constitutional claims concerning T.C.A. § 67-5-501.  *Id.*  However, "facial" constitutional claims which the Board is not authorized to hear may be submitted to and argued before the Tennessee Court of Appeals.  *Id.*  The Board's limited authority to decide constitutional issues "do[es] not establish that the State fails to provide a plain, speedy and efficient remedy for tax challenges."  *Wilson v. Bredesen*, 113 F. App'x 70, 73 (6th Cir. 2004) (unpublished case).  Since state courts will be able to address Colonial's constitutional challenges regardless of whether the claims may be characterized as "facial" or "as applied" constitutional challenges, Colonial has a state forum for raising constitutional claims.

### B.          Length of Board Proceedings

Colonial contends that Board proceedings are too lengthy to constitute a plain, speedy and efficient state remedy.  In support of this contention, Colonial points to its last administrative proceeding.  Admittedly, Colonial's last administrative proceeding "took more than five years from start to finish." (J.A. 209)  However, this last "proceeding involved multiple parties and tax years, months of discovery, a three-day evidentiary hearing before an administrative law judge during which the parties introduced extensive testimony and exhibits, and subsequent appeals to the State Board, the [Tennessee] Court of Appeals, and the Tennessee Supreme Court." (Def. Br. at 25)  The district court found that "the undisputed record reflects multiple parties were involved in a complex administrative proceeding."  (J.A. 209)  The length of the last proceeding does not appear unreasonable given the complexity of the administrative proceeding.

Although "Colonial began the state review process again in September 2004," it "has allowed the administrative matter to languish while it pursued relief before the Tennessee Tax Study Commission, the Tennessee General Assembly, and . . . th[e] federal court." (J.A. 209)  In fact, the district court found that "Defendants produced evidence that the matter remains pending on the State's administrative proceeding calendar." (J.A. 209)  Since there is no indication that the Board

proceedings will be excessively delayed,[2] the record does not support Colonia's contention that the current appeal before the Board – which involves only one party and one tax year – will take long to resolve.

Moreover, Colonial's contention that Tennessee cannot provide a plain, speedy and efficient remedy is belied by Colonial's success in the last proceeding. *See ANR Pipeline Co.*, 2002 WL 31840689, at *4. Although the Board ruled against Colonial on the property classification issue in the last proceeding, the Tennessee Court of Appeals reversed the Board. *See id.* The amendment of T.C.A. § 67-5-501 does not establish that the state fails to provide a plain, speedy and efficient remedy for Colonial's tax challenges. Since the Tennessee Court of Appeals adequately addressed Colonial's concerns in the last proceeding, it is unclear why Colonial now seeks to adjudicate its claims in federal court.

### 3. The State Board's Alleged Bias

Colonial alleges that the State Board A) has asserted a position contrary to its classification claims, and B) is inherently biased. Colonial's arguments are meritless.

### A. The Board Has Not Asserted a Position Contrary to Colonial's Claims

Colonial cites the September 7, 2004 letter from the Comptroller's office in support of its contention that the Board has asserted a position contrary to Colonial's claims. It cites *Northwestern Airlines, Inc.* for the proposition that it must bring its tax assessment challenge in federal court because of the Board's alleged bias. Admittedly, the Comptroller's September 7, 2004 letter references pending litigation. However, the reference to pending litigation appears to have been erroneous. The record indicates that the Board has not been involved in any litigation in which it has taken a position in conflict with the classification claims made in Colonial's complaint.

In *Northwest Airlines, Inc.*, this Court permitted an assessment challenge in federal court because the Board was involved in pending litigation in which it had asserted a position that directly conflicted with the taxpayer's claim. 11 F.3d at 72-73. In *Wilson*, this Court recognized that

> [t]he "peculiar" and "unique" facts of [*Northwest Airlines, Inc.*] presented "a rare exception" to the jurisdictional bar established by the Tax Injunction Act for one reason. *Id.* at 71, 73. In that case, the Tennessee Board of Equalization had taken a factual position on the assessment level of personal property in an unrelated case pending in federal court, and the position conflicted with the position of the airlines when they appeared before the Board. *Id.* at 72-73. In this unusual context, the court held that the Board's concurrent litigation position "preclud[ed] it from properly considering the evidence submitted by the airlines in support of their claims" before the Board. *Id.* at 73-74.

---

[2] In an unrelated case, Colonial presented evidence to support its contention that "Georgia's ad valorem tax system is plagued with . . . problems that render it virtually useless for correcting unequal tax assessments." *Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1240 (11th Cir. 1991). More specifically, Colonial argued that "only two part-time hearing officers are available to hear these appeals which has resulted in a backlog of more than 70 appeals," *id.* at 1240, and that Georgia's "appeals procedure is excessively burdensome because it creates circumstances where a centrally-assessed taxpayer must pursue simultaneous . . . appeals in each county in which it owns property." *Id.* at 1241. In the instant case, since Colonial has presented no evidence that would suggest systemic delays or backlogs in matters pending before the Board, Colonial has a viable state remedy.

*Wilson*, 113 F. App'x at 74 (citing *Northwest Airlines, Inc.*, 11 F.3d at 71-74). In *Northwestern Airlines, Inc.*, the Board adopted a position which prevented it from "properly considering the evidence submitted by [the taxpayers] in support of their claims." *Wilson*, 113 F. App'x at 74 (quoting *Northwest Airlines, Inc.*, 11 F.3d at 73-74).

In the instant case, the Board has not been involved in pending litigation and has not otherwise asserted a position that directly conflicts with Colonial's claims. This case is distinguishable from *Northwestern Airlines, Inc.*, and analogous to *Wilson*, because no impediment exists that would preclude the Board from considering Colonial's classification claims. Like the taxpayer in *Wilson*, Colonial cannot circumvent the state remedy by suing in federal court.

## B. The Board's Composition

Colonial maintains that the Board's composition renders the Board inherently unable to conduct an impartial administrative appeal. More specifically, it argues that four of the seven members of the Board are members of the Tennessee government's executive branch; that three of the four remaining Board members have executive functions and are elected by the Tennessee General Assembly; and that five of the seven members have revenue collection responsibilities in Tennessee. Colonial contends that the Board worked in conjunction with the Comptroller to deny equalization of *ad valorem* taxation, and that all Defendants acted jointly and severally and in cooperation with members of the Tennessee General Assembly in pursuit of common scheme to amend T.C.A. § 67-5-501(9) and deprive Colonial of equalization of *ad valorem* taxed. Colonial alleges that employees and members of the Board and the Comptroller's office drafted or supported the legislation that amended T.C.A. § 67-5-501(9).

For their part, Defendants maintain "that none of the[se] employees . . . are members of the State Board of Equalization who will be in a position to rule on Colonial's appeal." (Def. Br. at 31) Defendants contend that Board members have no pecuniary interest in the outcome of Colonial's constitutional challenge because "the property taxes at issue are county and local taxes, not state taxes." (Def. Br. at 34) Defendants argue that "the composition of the State Board, as mandated by statute, *see* Tenn. Code Ann. § 4-3-5101 (2005), does not appear to depart in any marked way from the usual composition of such state boards." (Def. Br. at 35)

With respect to this issue, the district court found that

> Colonial has produced no evidence to establish the Board is even involved in pending litigation on classification issues of interest to Colonial, let alone that the Board has taken a position in such litigation contrary to Colonial's view. While the Board members' involvement in the passage of Chapter 719 certainly indicates their support of a *change in the law,* their involvement does not indicate any prejudgment of the *facts* of Colonial's specific tax case.

(J.A. 207) (emphasis in original) (footnote omitted). The district court properly considered and rejected Colonial's bias claims. Indeed, "[a]dministrative decision-makers are presumed to carry out their duties with honesty and integrity." *Jones v. Greene*, 946 S.W.2d 817, 825 (Tenn. Ct. App. 1996); *see Doolin Sec. Sav. Bank v. F.D.I.C.*, 53 F.3d 1395, 1407 (4th Cir. 1995) ("we decline to abrogate the presumption of honesty and integrity of administrators who serve as adjudicators"). As the district court stated, "[a]n agency's support of a public opinion on a policy issue does not disqualify the agency on the grounds of bias from later acting in its adjudicative role." (J.A. 206) It is important to remember that "[e]ven if the Board had taken a position contrary to [the taxpayer] on *this* issue, moreover, the Board's position is a legal one subject to de novo review in state court, which again would provide her an ample avenue of state relief." *Wilson*, 113 F. App'x at 74

(emphasis in original). Since the Tennessee Court of Appeals will conduct a *de novo* review of the Board's legal conclusion, Colonial's allegations of bias are unpersuasive. As Colonial's last appeal illustrates, the state court may reverse the Board's decision. Therefore, we decline to accept Colonial's bias claims.

### 4.      Public Policy Concerns

Last, Colonial argues that this case does not present any of the public policy concerns which the Tax Injunction Act was enacted to address. More specifically, Colonial maintains that it has not withheld the payment of taxes. "The taxes for ad valorem tax year 2004 were paid under protest, but paid nonetheless." (J.A. 148) Colonial contends that since the state has not experienced a revenue interruption, this "case does not involve any of the dangers that the Tax Injunction Act was enacted to address." (Colonial's Br. at 58) Colonial does not cite any case law in support of this proposition. The Tax Injunction Act "has its roots in equity practice, in principles of federalism, and in recognition of the imperative need of a State to administer its own fiscal operations." *Tully*, 429 U.S. at 73. Comity principles bar Colonial from suing in federal court because

> the state's interest in administration of its judicial system is important . . . [and] federal court interference would be an offense to the state's interest, and . . . such interference would both unduly interfere with the legitimate activities of the state and readily be interpreted as reflecting negatively upon the state courts' ability to enforce constitutional principles.

*Gilbertson v. Albright*, 381 F.3d 965, 972 (9th Cir. 2004). Therefore, even if tax payments have not been withheld, the Tax Injunction Act bars the instant action.

### CONCLUSION

As discussed above, Colonial's claims are the precise type of claims the Tax Injunction Act was intended to bar. The district court lacks subject matter jurisdiction because the Tax Injunction Act, 28 U.S.C. § 1341, and comity principles prohibit the district court from issuing an injunction enjoining the collection of state taxes. For the foregoing reasons, we **AFFIRM** the district court's decision.